NORTHWEST PROPERTY GROUP, LLC, PETITIONER v. TOWN OF CARRBORO; THE TOWN OF CARRBORO BOARD OF ALDERMEN; THE HONORABLE MARK CHILTON, IN HIS OFFICIAL CAPACITY; JOAL HALL BROUN, DAN COLEMAN, JACQUELYN GIST, JOHN HERRERA, RANDEE HAVEN-O'DONNELL, ALEX ZAFFRON, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE TOWN OF CARRBORO BOARD OF ALDERMEN, RESPONDENTS

No. COA08-929

(Filed 22 December 2009)

**1. Zoning— special use permit—standard of judicial review**

The trial court applied the correct standard of review in examining the lawfulness of a Board of Aldermen (Board) decision to adopt conditions to a conditional use permit. Although the trial court stated that the reviewing court will normally defer to a Board within limits, nothing in the court's order indicates that it utilized this standard in reviewing any issue to which the whole record test applied.

**2. Zoning— special use permit—application in full compliance—conditions—authority**

The Board of Alderman (Board) did not exceed its authority under a zoning ordinance adopting the challenged conditions to a special use permit after voting that the permit application complied with the requirements of the ordinance. Although petitioners argued that mandatory language in the ordinance requires that the permit be granted unconditionally if it is facially complete and in compliance with the ordinance, the more appropriate reading of the ordinance is that the Board, after it votes that the application complies with requirements, still has the right to deny the application or adopt conditions pursuant to ordinance sections.

**3. Zoning— special use permit—conditions—findings**

The trial court erred by not finding that the Board of Aldermen (Board) committed an error of law where the Board did not make any findings justifying the imposition of conditions on the granting of a special use permit. The matter was remanded for a new decision addressing all of the issues.

Judge ROBERT C. HUNTER concurs in part and dissents in part.

Appeal by petitioner from order entered 25 April 2008 by Judge R. Allen Baddour, Jr., in Orange County Superior Court. Heard in the Court of Appeals 10 February 2009.

*Nexsen Pruet, PLLC, by M. Jay DeVaney and Brian T. Pearce, for petitioner-appellant.*

*The Brough Law Firm, by Michael T. Brough, for respondent-appellees.*

ERVIN, Judge.

Northwest Property Group, LLC (Petitioner) appeals from a Memorandum and Order entered by the trial court on 25 April 2008 on certiorari review of the 25 September 2007 decision of the Town of Carrboro's (Town) Board of Aldermen (Board) to grant a conditional use permit (permit) to Petitioner subject to certain conditions, including two conditions to which petitioner objects. After careful consideration of the record in light of the applicable law, we conclude that the trial court erred by failing to find that the Board did not make the findings of fact required to support the addition of the challenged conditions to the permit and that this matter should be remanded to the trial court for further remand to the Board for the making of a new decision that addresses all of the issues that arise as the result of Petitioner's application for the issuance of a permit.

## I. Factual Background

On 8 June 2006, Petitioner applied to the Town for the issuance of a permit allowing the development of a 7.1 acre tract of real property (property) located at the intersection of Jones Ferry Road and Barnes Street in Carrboro, North Carolina. As part of the development process, Petitioner had engaged in negotiations with Harris-Teeter to build and operate a grocery store on the property. In addition, Petitioner's development plans contemplated the construction of two additional buildings that would house other commercial establishments. The plans for the development proposed for the property included unrestricted access to the property from Barnes Street.

As part of the application process, Petitioner provided the Town with a Traffic Impact Analysis (traffic study) that concluded that the estimated increase in traffic on Barnes Street did not meet North Carolina Department of Transportation (NCDOT) Standards for the addition of a traffic signal or roundabout. According to the traffic

study, the proposed development was expected to generate over 5,000 vehicle trips per day, approximately 25% of which would involve use of Barnes Street to access the development site. The traffic study indicated that ten accidents had occurred at the intersection of Jones Ferry Road and Barnes Street during the past five years and that the "intersection of Jones Ferry Road and Barnes Street ranks as the third worst intersection in Carrboro, in terms of crash severity at high speed intersections[.]" The traffic study concluded with respect to the intersection of Jones Ferry Road and Barnes Street and the proposed Barnes Street access point that "the intersection will operate at an acceptable level of service during both the A.M. and P.M. peak hours."

The Town's Planning Staff (Staff) issued a report (Staff Report) that recommended that the Board grant the proposed permit subject to certain conditions, including a proposed condition providing:

That additional right-of-way at the corner of Barnes Street and Jones Ferry Road be dedicated to the Town of Carrboro and NCDOT for the possible future construction of a round about at this intersection prior to the Certificate of Occupancy being issued for the proposed buildings. Amount [sic] of right of way dedication shall be sufficient to construct 120 foot diameter roundabout.

Petitioner "agree[d] to comply with this recommendation, assuming that the roundabout is centered on the existing intersection." The Staff Report did not propose any limitation relating to the use of the proposed Barnes Street ingress and egress point.

A number of Town advisory boards made recommendations relating to the proposed Barnes Street ingress and egress point. The Planning Board suggested that Petitioner "take[] measures, including signage and tenant regulations, to prevent delivery trucks from using the Barnes Street ingress/egress" point. Petitioner agreed to comply with this recommendation. In addition, the Planning Board stated:

Planning Board strongly supports the Board of Alderm[e]n in negotiations with NCDOT that will bring some resolution of serious safety concerns at the intersection of Jones Ferry. Particularly, the Planning Board wants a clearly marked crosswalk on the north side of Jones Ferry, and some form of signalization at this intersection, a flashing warning light at the very least if not a traffic light.

The Transportation Advisory Board (TAB) recommended "[t]hat . . . delivery, service and/or dumpster traffic be prohibited via the Barnes Street [ingress and egress] point." Petitioner agreed to this recommendation as well. In addition, the TAB proposed that the Barnes Street ingress and egress point be limited to incoming traffic only; however, Petitioner declined to accept this recommendation on the grounds that Harris-Teeter would "not proceed with involvement in this project without two means of ingress and egress." Since NCDOT regulations precluded multiple access points onto the property from Jones Ferry Road, Petitioner contended that the additional ingress and egress point required by Harris-Teeter would have to be built on Barnes Street.

On 18 September 2007, a public hearing was held on Petitioner's application. At that hearing, a number of citizens expressed concern about the impact of the proposed development on nearby neighborhoods, with the stated concerns including references to "the dangerous traffic" pattern that would result from the creation of the Barnes Street ingress and egress point. The hearing on Petitioner's application was continued until 25 September 2007.

On or about 24 September 2007, a group of "[r]esidents of Lincoln Park" submitted a petition to the Board requesting denial of the application unless vehicular access to the proposed development from Barnes Street was prohibited. According to the Lincoln Park residents:

Under the current layout, developers estimate that at least 1,250 additional vehicles per day would use Barnes Street for access to the [development]; this vehicle load will be dangerous for pedestrians, bicyclists, and drivers, and will negatively impact the surrounding neighborhood due to noise and air pollution. This road was designed as a residential street and should remain one.

In light of the concerns expressed by the residents of the neighborhood, Petitioner agreed to "move the Barnes Street driveway approximately 160 feet north [towards Jones Ferry Road] to help reduce the project's effect on the Barnes Street residences." However, Petitioner insisted, given Harris-Teeter's need for multiple points of entrance, that the Barnes Street ingress and egress point be retained.

As scheduled, a second public hearing was conducted on 25 September 2007. At that hearing, additional Carrboro citizens testified about their concerns relating to the proposed Barnes Street

ingress/egress point. After the 25 September 2007 public hearing was closed, the following proceedings occurred:

MOTION WAS MADE BY ALEX ZAFFRON AND SECONDED BY JOHN HERRERA THAT THE APPLICATION IS COMPLETE. VOTE: AFFIRMATIVE ALL.

MOTION WAS MADE BY ALEX ZAFFRON AND SECONDED BY JOHN HERRERA THAT THE APPLICATION COMPLIES WITH ALL APPLICABLE REQUIREMENTS OF THE LAND USE ORDINANCE. VOTE: AFFIRMATIVE ALL.

MOTION WAS MADE BY ALEX ZAFFRON AND SECONDED BY JOHN HERRERA THAT IF THE APPLICATION IS GRANTED, THE PERMIT SHALL BE ISSUED SUBECT TO THE FOLLOWING CONDITIONS: . . . VOTE: AFFIRMATIVE SIX, NEGATIVE ONE (BROUN).

The effect of the Board's decision was to conclude that the Petitioner's application was complete, that it "complie[d] with all applicable requirements of the Land Use Ordinance," and that the Permit should be approved, subject to 37 conditions. Although Petitioner had agreed to the vast majority of the conditions attached to the Permit by the Board, it objected to the following conditions:

(2)   If any of the conditions affixed hereto or any part thereof shall be held invalid or void, then this permit shall be void and of no effect.

. . . .

(15)  The relocated entrance/exit onto Barnes Street . . . will be restricted to emergency use only and that appropriate bollards or other physical devices shall be erected to prevent the movement of traffic other than emergency vehicles.[1]

On 23 October 2007, Petitioner filed a Petition For Writ Of Certiorari with the Orange County Superior Court in which it contested the validity of Condition Nos. 2 and 15. On 20 November 2007, Petitioner's petition was granted for the purpose of allowing review of the Board's decision. Petitioner's substantive challenge to the Board's decision was heard before the trial court on 17 March

_____

1. The condition quoted in the text as Condition No. 15 is taken from the Board's meeting minutes. The identical condition in the issued permit is stated as Condition No. 14. We will refer to the disputed conditions as Condition Nos. 2 and 15 or as the "challenged conditions" in the remainder of this opinion.

2008. On 25 April 2008, the trial court entered a Memorandum and Order upholding the Board's decision to adopt the challenged conditions. Petitioner noted an appeal to this Court from the trial court's decision.

## II.  Legal Analysis

### A.  General Legal Authority Applicable to Judicial Review of Municipal Decisions Granting, Denying or Conditioning Approval of Conditional Use Permits

The General Assembly authorized municipalities to issue conditional use permits in N.C. Gen. Stat. § 160A-381(c), which provides, in pertinent part, that:

> [T]he board of adjustment or the city council may issue special use permits or conditional use permits in the classes of cases or situations [set forth in the zoning ordinance] and in accordance with the principles, conditions, safeguards and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits.

"The general law of zoning indicates that a condition imposed on a conditional use permit is improperly imposed when it is not related to the use of the land, the control, ownership, or transfer of property[;] it unreasonably affects the way in which business on the property can be conducted[;] or it conflicts with a zoning ordinance." *Overton v. Camden Cty.*, 155 N.C. App. 100, 104, 574 S.E.2d 150, 153 (2002). "This Court has regularly upheld conditions attached to the issuance of [conditional] use permits[.]" *MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs*, 169 N.C. App. 809, 815, 610 S.E.2d 794, 798, *disc. review denied*, 359 N.C. 634, 616 S.E.2d 540, *appeal dismissed*, 359 N.C. 634, 616 S.E.2d 539 (2005) (citation omitted).

At such time as an applicant for a conditional use permit has "produce[d] competent, material, and substantial evidence of compliance with all ordinance requirements, the applicant has made a *prima facie* showing of entitlement to a permit." *SBA, Inc. v. City of Asheville City Council*, 141 N.C. App. 19, 27, 539 S.E.2d 18, 22 (2000) (citation omitted). After an applicant has made the required showing, the burden of establishing that approval of a conditional use permit would endanger the public health, safety, and welfare shifts to those opposing issuance of the permit. *See Woodhouse v. Board of Commissioners*, 299 N.C. 211, 219, 261 S.E.2d 882, 888 (1980). The denial of a conditional use permit must be predicated upon findings

of fact which are supported by competent, material, and substantial evidence appearing in the record. *See SBA*, 141 N.C. App. at 27, 539 S.E.2d at 22. For that reason, a municipal governing body may not deny or condition a conditional use permit based upon the exercise of its unguided discretion or upon a standardless determination that approval of the application would adversely affect some generic view of the public interest. *See In re Application of Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 81 (1970).

In reviewing a decision made by a municipal board sitting as a quasi-judicial body for the purpose of evaluating an application for the issuance of a conditional use permit, the role of the trial court is limited to:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and local ordinance are followed,.

(3) Insuring that the due process rights of the petitioner are protected, including the right to offer evidence, to cross-examine witnesses, and to inspect documents,

(4) Insuring that the decision of the town board is supported by competent, material and substantial evidence in view of the whole record, and

(5) Insuring that the town board's decision is not arbitrary and capricious.

*Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *rehearing denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). "A reviewing court will normally defer to a board of adjustment so long as a condition is reasonably related to the proposed use, does not conflict with the zoning ordinance, and furthers a legitimate objective of the zoning ordinance." *Overton*, 155 N.C. App. at 398, 574 S.E.2d at 153 (citing *Chambers v. Board of Adjustment*, 250 N.C. 194, 195, 108 S.E.2d 211, 213 (1959)). However, "in making a decision on an application for a [conditional] use permit, the Council may not arbitrarily violate its own rules, but must comply with the provisions of its Ordinance." *Clark v. City of Asheboro*, 136 N.C. App. 114, 119, 524 S.E.2d 46, 50 (1999).

In examining either the sufficiency of the evidence or whether the board's decision was arbitrary and capricious, the trial court applies the "whole record test." *Westminster Homes, Inc. v. Town of*

*Cary Zoning Bd. of Adjust.*, 140 N.C. App. 99, 102, 535 S.E.2d 415, 417 (2000), *aff'd*, 354 N.C. 298, 554 S.E.2d 634 (2001). " 'The "whole record" test requires the reviewing court to examine all the competent evidence . . . which comprises the "whole record" to determine if there is substantial evidence in the record to support the [quasi-judicial body's] findings and conclusions.' " *Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 273, 533 S.E.2d 525, 528, *writ of supersedeas and disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000) (quoting *Ellis v. N.C. Crime Victims Compensation Comm.*, 111 N.C. App. 157, 162, 432 S.E.2d 160, 163-64 (1993)). "The 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). Errors of law, on the other hand, are reviewed *de novo*. *Westminster Homes*, 140 N.C. App. at 102, 535 S.E.2d at 417.

Upon appeal from a trial court's order addressing the lawfulness of a municipal board's decision concerning an application for approval of a conditional use permit, the appellate court is limited to determining whether the trial court applied the correct standard of review and whether it correctly applied that standard. *Id.*, 140 N.C. App. at 102-03, 535 S.E.2d at 417. "In reviewing the sufficiency and competency of the evidence at the appellate level, the question is not whether the evidence before the superior court supported that court's order but whether the evidence before the town board was supportive of its action." *Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383. In light of these basic principles, we will now address Petitioner's challenges to the validity of the trial court's order upholding the Board's decision to issue the requested permit subject to the two challenged conditions.

### B. The Trial Court Utilized the Correct Standard of Review

[1] On appeal, Petitioner initially contends that the trial court failed to apply the correct standard of review in examining the lawfulness of the Board's decision to adopt the two challenged conditions. In support of this contention, Petitioner argues that it had "requested that the Superior Court review the decision of the . . . Board to ensure it was (i) supported by competent, material and substantial evidence and (ii) was not arbitrary and capricious" and that "the Court was to apply the whole record test to conduct this review." On the other

hand, Petitioner argued that Respondents contended that "the Superior Court could only review whether the . . . Board erred in determining Condition 15 was reasonable" and that the trial court could "only apply *de novo* review to determine this question." Although Petitioner acknowledges that the trial court included a section entitled "Applicable Law" in its Memorandum and Order and does not appear to quarrel with the accuracy of any specific statement made in that portion of the trial court's order, Petitioner notes that the trial court quoted language from our *Overton* decision suggesting the appropriateness of giving a certain amount of deference to the judgment of the local governmental body in dealing with certain conditioning issues, *Overton*, 155 N.C. App. at 398, 574 S.E.2d at 163, and argues that "[t]he deference standard **does not apply** when a court is conducting a whole record review to determine the sufficiency of the evidence to support a condition or whether a town board acted arbitrarily and capriciously in attaching a condition (emphasis in original)." As a result, Petitioner urges us to remand this case to the trial court for a more definitive statement of the standard of review that it employed in examining the validity of the Board's decision in the event that we do not find that its decision lacked adequate evidentiary support or that the Board acted arbitrarily and capriciously.

A careful review of the trial court's order, however, indicates that it correctly quoted and applied the proper standard of review. More particularly, the trial court acknowledged the applicability of the five factors enumerated in *Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383. In addition, the trial court explicitly stated that "[t]he court is to apply the 'whole record' test when reviewing either the sufficiency of the evidence, or whether the Board's decision was arbitrary and capricious, and errors of law are reviewed *de novo*." Although the trial court did, as Petitioner notes, state in reliance on *Overton* that "[a] reviewing court will normally defer to a Board so long as a condition is reasonably related to the proposed use, does not conflict with the zoning ordinance, and furthers a legitimate objective of the zoning ordinance," nothing in the trial court's order indicates that it utilized this standard in reviewing any issue to which the "whole record" test actually applied. Furthermore, we have seen nothing in the trial court's order to suggest that it failed to apply the correct standard of review in addressing Petitioner's specific challenges to the lawfulness of the Board's actions. As a result, we conclude that the trial court applied the correct standard of review and will proceed to examine the extent, if any, to which it correctly applied the appli-

cable standard to Petitioner's challenges to the Board's actions, which we will address in logical order rather than in the order in which Petitioner has advanced them in its brief.

### C. The Board Did Not Violate the Land Use Ordinance by Adopting the Additional Conditions to Which Petitioner Objects

**[2]** In its brief, Petitioner contends, with the agreement of our dissenting colleague, that the Board failed to comply with applicable local ordinance provisions and that, given the manner and order in which the Board acted, it was required to issue the requested permit without the challenged conditions.[2] After carefully reviewing the record in light of the relevant ordinance provisions of the Town's Land Use Ordinance (ordinance), we disagree.

The substantive rules and procedures that the Board is required to follow in connection with the consideration of applications for the issuance of Conditional Use Permits are specified in the ordinance. According to Section 15-54:

(a) An application for a special use permit shall be submitted to the board of adjustment by filing a copy of the application with the administrator in the planning department.

(b) An application for a conditional use permit shall be submitted to the Board of Aldermen by filing a copy of the application with the administrator in the planning department.

(c) The board of adjustment or Board of Aldermen, respectively, shall issue the requested permit unless it concludes, based upon the information submitted at the hearing, that:

(1) The requested permit is not within its jurisdiction according to the table of permissible uses;

(2) The application is incomplete, or

(3) If completed as proposed in the application, the development will not comply with one or more requirements of this chapter (not including those the applicant is not

---

2. Although Petitioner advances the "mandatory issuance" argument discussed in the text in its brief, it has not assigned the trial court's failure to adopt this argument as error. However, given the possibility that the Board may have committed "fundamental error," *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008), we have concluded that we should examine this issue on "the merits despite the occurrence of default" in accordance with the authority granted pursuant to N.C.R. App. P. 2.

required to comply with under the circumstances speci-
fied in Article VIII, Nonconforming Situations);

(4) If completed as proposed, the development, more prob-
ably than not:

(a) Will materially endanger the public health or safety;
or

(b) Will substantially injure the value of adjoining or
abutting property; or

(c) Will not be in harmony with the area in which it is to
be located; or

(d) Will not be in general conformity with the Land Use
Plan, Thoroughfare Plan, or other plans officially
adopted by the Board.

Section 15-58, which addresses "Board Action On Special Use and
Conditional Use Permits," provides that:

In considering whether to approve an application for a special or
conditional use permit, the board of adjustment or the Board of
Aldermen shall proceed according to the following format:

(1) The board shall consider whether the application is com-
plete. If no member moves that the application be found
incomplete (specifying either the particular type of infor-
mation lacking or the particular requirement with respect
to which the application is incomplete) then this shall be
taken as an affirmative finding by the board that the
application is complete.

(2) The board shall consider whether the application com-
plies with all of the applicable requirements of this chap-
ter. If a motion to this effect passes, the board need not
make further findings concerning such requirements. If
such a motion fails or is not made then a motion shall be
made that the application be found not in compliance
with one or more of the requirements of this chapter.
Such a motion shall specify the particular requirements
the application fails to meet. Separate votes may be taken
with respect to each requirement not met by the applica-
tion. It shall be conclusively presumed that the applica-
tion complies with all requirements not found by the
board to be unsatisfied through this process.

(3) If the board concludes that the application fails to comply with one or more requirements of this chapter, the application shall be denied. If the board concludes that all such requirements are met, it shall issue the permit unless it adopts a motion to deny the application for one or more of the reasons set forth in Subdivision 15-54(c)(4). Such a motion shall propose specific findings, based upon the evidence submitted, justifying such a conclusion.

Finally, Section 15-59 addresses the issue of "Additional Requirements on Special Use and Conditional Use Permits" and states that:

(a) Subject to subsection (b), in granting a special or conditional use permit, the board of adjustment or Board of Aldermen, respectively, may attach to the permit such reasonable requirements in addition to those specified in this chapter as will ensure that the development in its proposed location:

(1) Will not endanger the public health or safety;

(2) Will not injure the value of adjoining or abutting property;

(3) Will be in harmony with the area in which it is located; and

(4) Will be in conformity with the Carrboro Land Use Plan, Thoroughfare Plan, or other plan officially adopted by the Board.

(b) The permit-issuing board may not attach additional conditions that modify or alter the specific requirements set forth in this ordinance unless the development in question presents extraordinary circumstances that justify the variation from the specified requirements.

. . . .

(e) All additional conditions or requirements authorized by this section are enforceable in the same manner and to the same extent as any other applicable requirement of this chapter.

(f) A vote may be taken on additional conditions or requirements before consideration of whether the permit should be denied for any of the reasons set forth in Subdivision 15-54(c)(3) or (4).

Based upon its analysis of these provisions, Petitioners, with the agreement of the dissent, contend that, in order to attach a condition to a permit, the Board must first establish a basis for the denial of a permit and make specific findings in support of that determination. After making the necessary findings, the Board then has the discretion to adopt appropriate conditions so as to allow approval of the permit. On the other hand, in the event the Board is faced with an application that is facially complete, in compliance with the ordinance, and not subject to denial under Section 15-54, the Board has no alternative except to grant the permit unconditionally given the mandatory language found in Section 15-54(c). Given that the Board voted that the application was complete and was in compliance with the ordinance, and that the Board did not make findings justifying denial of the application under Section 15-54(c)(4), Petitioner and our dissenting colleague conclude that the Board lost its authority to adopt additional conditions since the only purpose of the conditioning authority granted by the ordinance was to bring an otherwise noncompliant application into compliance. After careful study of the relevant ordinance provisions, we cannot agree with this construction of the ordinance.

The fundamental source of our disagreement with this logic is that it rests upon a misreading of the applicable ordinance provisions. In essence, the Petitioner and the dissent understand permit approval and the conditioning process to be two sides of the same coin, while we believe that permit approval and conditioning are two different things. A proper resolution of this difference of opinion requires an examination of the language of the relevant ordinance provisions.

According to Section 15-54, "[t]he board of adjustment or Board of Aldermen, respectively, *shall* issue the requested permit unless it concludes, based upon the information submitted at the hearing," that (1) "[t]he requested permit is not within its jurisdiction;" (2) "[t]he application is incomplete;" (3), "[i]f completed as proposed in the application, the development will not comply with one or more requirements of this chapter;" or (4), "[i]f completed as proposed, the development, more probably than not," "[w]ill materially endanger the public health or safety;" "substantially injure the value of adjoin-

ing or abutting property;" "not be in harmony with the area in which it is to be located;" or "not be in general conformity with the Land Use Plan, Thoroughfare Plan, or other plans officially adopted by the Board (emphasis added)." Nothing in Section 15-54 in any way addresses the issue of conditions, which is covered in Section 15-59(a). Section 15-59(a) provides that, "in granting a special or conditional use permit, the board of adjustment or Board of Aldermen, respectively, may attach to the permit such reasonable requirements in addition to those specified in this chapter as will ensure that the development in its proposed location" "[w]ill not endanger the public health and safety;" "[w]ill not injure the value of adjoining or abutting property;" [w]ill be in harmony with the area in which it is located;" and "[w]ill be in conformity with the Carrboro Land Use Plan, Thoroughfare Plan, or other Plan officially adopted by the Board." However, according to Section 15-59(b), the Board "may not attach additional conditions that modify or alter the specific requirements set forth in this ordinance unless the development in question presents extraordinary circumstances that justify the variation from the specified requirements." As a result, the relevant provisions of the ordinance treat the decision as to whether to approve a request for the issuance of a conditional use permit and the issue of whether to condition an awarded conditional use permit as two separate and distinct issues.

A similar dichotomy appears in the ordinance provisions governing the procedures to be followed by the Board in considering applications for approval of conditional use permits. According to Section 15-58(1), in deciding whether to issue a conditional use permit, "[t]he board shall [first] consider whether the application is complete." Assuming that the applicant overcomes that hurdle, "the board shall [next] consider whether the application complies with all of the applicable requirements of this chapter." Section 15-58(2). "If the board concludes that the application fails to comply with one or more of the requirements of this chapter, the application shall be denied." Section 15-58(2). "If the board concludes that" the "requirements of this chapter" "are met," "it shall issue the permit unless it adopts a motion to deny the application for one or more of the reasons set forth in" Section 15-54(c)(4). Section 15-58(3). "A vote may be taken on additional conditions or requirements before consideration of whether the permit should be denied for any of the reasons set forth in" Section 15-54(c)(3) or (4). Section 15-59(f). As a result, the relevant procedural provisions of the ordinance provide for separate con-

sideration of (1) whether the application is complete; (2) whether the application "complies with all of the applicable requirements of this chapter;" (3) whether an application should be denied "for one or more of the reasons set forth in" Section 15-54(c)(4); and (4) whether conditions should be imposed pursuant to Section 15-59(a).

According to its minutes, the Board initially decided that Petitioner's application was complete and that it complied with the provisions of the ordinance. Contrary to the position espoused by Petitioner and the dissent, the second decision did not preclude the adoption of the conditions approved in the third decision for two different reasons. First, the effect of the second of the Board's decisions was not that all issues necessary to the approval of the proposed permit had been addressed; instead, the effect of that decision was simply that the criterion enunciated in Section 15-54(c)(3) had been complied with. In view of the fact that compliance with Section 15-54(c)(4) was necessary in order for the proposed conditional use permit to win Board approval and the fact that the Board retained the right to deny the proposed permit pursuant to Section 15-54(c)(4), the second Board vote simply did not necessitate approval of Petitioner's permit application without the imposition of additional conditions. Secondly, and perhaps more importantly, nothing in the ordinance precludes the imposition of otherwise appropriate conditions on an approved application despite votes of the nature recorded in the Board's minutes or even a vote to approve the issuance of a conditional use permit. The fact that Section 15-59(a) addresses the issue of conditioning in a completely separate section of the ordinance from that addressing the issue of permit approval or disapproval and the fact that Section 15-59(f) permits, but does not require, the issue of whether to adopt conditions to be considered prior to the point in time at which the Board decides whether to approve or disapprove a proposed conditional use permit necessarily implies that the adoption of conditions can be considered after that point in time as well. As a result, we conclude that the Board did not lose the ability to adopt additional conditions at the time that it approved a motion to the effect that "the application complies with all applicable requirements of the land use ordinance." Instead, we believe that the more appropriate reading of the relevant ordinance provisions is that, once the Board voted that "the application complied with all applicable requirements of the land use ordinance," it still had the right to either (1) deny the application pursuant to Section 15-54(c)(4) or to (2) adopt conditions pursuant to Section 15-59(a), and that its decision to

adopt conditions pursuant to Section 15-59(a) in lieu of either approving the application without further modification or denying the application pursuant to Section 15-54(c)(4) was consistent with the relevant provisions of the ordinance.

The dissent reaches a contrary conclusion by attempting to read Section 15-54(c) in conjunction with Section 15-59(a). According to the dissent, if the permit does not comply with any one of the components of Section 15-54(c)(4), the Board has the authority to deny the permit, and the Board must have grounds for denying the proposed permit in order to impose conditions since the purpose of imposing conditions is to allow the permit to be approved. There are two fundamental problems with this logic. First, this argument assumes, rather than demonstrates, that the only purpose of imposing conditions pursuant to Section 15-59(a) is to bring a proposed application into compliance with the ordinance. No provision of the ordinance explicitly states such a requirement, and we are unwilling to infer the existence of such a requirement because the same language appears in both Section 15-54(c)(4) and Section 15-59(a). Secondly, and perhaps more importantly, the second motion adopted by the Board appears to have been intended to address the criterion set out in Section 15-54(c)(3) rather than all of the criteria that must be satisfied before a valid conditional use permit can be issued, including those set out in Section 15-54(c)(4). We reach this conclusion for a number of reasons, including (1) the similarity between the language of Section 15-58(2), which is the procedural section upon which our dissenting colleague relies, and Section 15-54(c)(3) and (2) the fact that Section 15-58(3) clearly indicates that the motion contemplated by Section 15-58(2) is not intended to address the extent to which the proposed project complies with Section 15-54(c)(4). As a result, we do not believe that the Board's conditioning authority under the ordinance is limited to the adoption of conditions that permit the approval of a proposed conditional use permit.

Thus, for all of the reasons set forth above, we conclude that the Board did not exceed its authority under the ordinance by adopting the challenged conditions after voting that "the application complie[d] with all applicable requirements of the land use ordinance." As a result, the Board had the authority, assuming that its actions were otherwise consistent with the ordinance and the applicable law, to adopt the challenged conditions.

## D.  The Board Erred by Failing to Make Findings of Fact in Support of its Decision to Adopt the Challenged Conditions

**[3]** "The courts have required municipal agencies to make findings when ruling on an application for a special use permit, so that the reviewing court may properly determine whether the agency has acted lawfully and the parties will be informed of the grounds for the decision." *Piney Mt. Neighborhood Assoc. v. Town of Chapel Hill*, 63 N.C. App. 244, 256, 304 S.E.2d 251, 258 (1983) (citation omitted). Having adopted the challenged conditions pursuant to its authority under Section 15-59(a), the Board was required by well-established principles of North Carolina law to make findings of fact justifying its decision to impose the challenged conditions. *Crist v. City of Jacksonville*, 131 N.C. App. 404, 405, 507 S.E.2d 899, 900 (1998) (stating that "[f]indings of fact are an important safeguard against arbitrary and capricious action by the Board of Adjustment because they establish a sufficient record upon which this Court can review the Board's decision" and holding that, although "neither N.C. Gen. Stat. § 160A-388[,] . . . nor section 25-33 of the Jacksonville City Code[,] [explicitly] . . . requires findings of fact in denying a variance," a remand for such findings was necessary). A careful examination of the Board's decision discloses that it completely failed to make any factual findings justifying its decision to adopt the challenged conditions over Petitioner's objection. As a result, the trial court erred by failing to find that the Board committed an error of law due to its failure to make factual findings in support of its decision to impose the challenged conditions. Given the existence of this error, this case should be remanded to the trial court for further remand to the Board with instructions to reconsider Petitioner's application for the issuance of a conditional use permit and to enter a new decision containing appropriate findings of fact addressing all of the material issues raised by Petitioner's application. In light of the necessity for this matter to receive further consideration from the Board, we need not resolve the hotly-debated issue concerning the extent to which the criteria set out in Section 15-59(a) should be viewed in the conjunctive or the disjunctive, since the manner in which the Town applies the ordinance will be revealed by any findings of fact that it ultimately makes and since it would be premature for us to address this issue in the absence of proper findings of fact explaining the manner in which the Board applies the relevant ordinance provision.

## E. Other Issues

In addition to challenging the Board's compliance with the relevant provisions of the Land Use Ordinance, Petitioner advances a number of other arguments, including contentions that the Board's decision to adopt the challenged conditions lacked sufficient evidentiary support, that the Board's decision to adopt the challenged conditions was arbitrary and capricious, that the challenged conditions attached to the permit were unreasonable as a matter of law, and that the trial court should have modified the permit without the necessity for further proceedings on remand. Having concluded that the Board failed to make sufficient findings of fact to support the imposition of the challenged conditions, we do not believe that it is necessary or appropriate for us to address these issues at this time to the extent that we have not already done so. Having decided that the Board should make a new decision containing proper findings of fact addressing the material issues raised by Northwest's application for a conditional use permit, we should not presume that the Board will necessarily adopt the same conditions on remand that were adopted at the original proceeding or that we are in a position to ascertain the exact nature of the factual findings that the Board will make in support of any conditions that it chooses to impose. On the contrary, we can only determine whether the factual findings that the Board actually makes have sufficient evidentiary support or whether any decision that the Board makes based upon those factual findings is arbitrary, capricious, or unreasonable after the Board has actually made its decision on remand. As a result, we believe that the most appropriate course is for us to simply remand this case to the trial court for further remand to the Board for the making of a new decision that addresses all of the issues that arise as a result of Petitioner's application for the issuance of a conditional use permit and to leave the remaining issues that Petitioner has brought to our attention for decision on another day, assuming that those issues ever need to be decided. *City of Jacksonville*, 131 N.C. App. at 406, 507 S.E.2d at 900 (concluding that, given the board's failure to make findings of fact, the appropriate remedy was "remand [] to the Board of Adjustment to make findings of fact to support their decision"). As a result, we do not believe that it is appropriate for us to attempt to address the remaining issues that Petitioner has discussed in its brief and will decline to do so at this time.

### III.  Conclusion

Thus, for the reasons set forth above, we conclude that the trial court erred by failing to determine that the Board did not make sufficient findings of fact to support the challenged conditions. As a result, we reverse the trial court's order and remand this case to the trial court for further remand to the Board for the making of a new decision that addresses all of the issues that arise as the result of Petitioner's application for the issuance of a conditional use permit.

REVERSED AND REMANDED.

Judges WYNN concurs.

Judge ROBERT C. HUNTER concurs in part and dissents in part by separate opinion.

HUNTER, Robert C., Judge, concurring in part and dissenting in part.

After careful review, I concur with the Court's conclusion that the Town of Carrboro ("the Town") erroneously failed to make the findings of fact required as a prerequisite for imposing the conditions to which Northwest Property Group, LLC ("Northwest") objects in connection with the approval of the conditional use permit. I respectfully dissent from those portions of the Court's opinion that conclude that the Town's Board of Alderman ("the Board") did not violate the Town's Land Use Ordinance when it adopted the challenged conditions. This case should be remanded to the trial court with instructions to strike conditions two and fifteen and then remand to the Board to reissue the permit without those conditions.

### Analysis

#### I.  Standard of Review

With regard to the standard of review for the trial court upon writ of certiorari:

[I]t is clear that the task of a court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes:

(1)  Reviewing the record for errors in law,

(2)  *Insuring that procedures specified by law in both statute and ordinance are followed,*

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Coastal Ready-Mix Concrete Co., Inc. v. Board of Comm'rs of Nags Head,* 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980) (emphasis added). "The superior court is not the trier of fact but rather sits as an appellate court and may review both (i) sufficiency of the evidence presented to the municipal board and (ii) whether the record reveals error of law." *Capricorn Equity Corp. v. Town of Chapel Hill,* 334 N.C. 132, 136, 431 S.E.2d 183, 186 (1993).

This Court's standard of review of a superior court order upon writ of certiorari is as follows:

(1) to determine whether the trial court exercised the proper scope of review, and (2) *to review whether the trial court correctly applied this scope of review.* When a party alleges an error of law in the Council's decision, the reviewing court examines the record *de novo,* considering the matter anew. However, when the party alleges that the decision is arbitrary and capricious or unsupported by substantial competent evidence, the court reviews the whole record. Denial of a conditional use permit must be based upon findings which are supported by competent, material, and substantial evidence appearing in the record.

*Humane Soc'y of Moore Cty., Inc. v. Town of Southern Pines,* 161 N.C. App. 625, 629, 589 S.E.2d 162, 165 (2003) (quotation marks and internal citations omitted) (emphasis added). In reviewing the 25 April 2008 Order, I agree with the majority's determination that the trial court exercised the proper scope of review. The "Applicable Law" section of the order accurately states the role of the trial court. Particularly, with regard to what will be discussed *infra,* the trial court acknowledged the five factors to be considered by the court. *Coastal Ready-Mix Concrete Co.,* 299 N.C. at 626, 265 S.E.2d at 383. The trial court also recognized that any conditions imposed on a conditional use permit must be reasonable. *Overton v. Camden Cty.,* 155 N.C. App. 100, 104, 574 S.E.2d 150, 153-54 (2002).

The general law of zoning indicates that a condition imposed on a conditional use permit is improperly imposed when it is not related to the use of the land, the control, ownership, or transfer of property, it unreasonably affects the way in which business on the property can be conducted, *or it conflicts with a zoning ordinance.*

*Id.* (Emphasis added.)

Nevertheless, the trial court did not correctly apply the scope of review as there were procedural errors committed by the Board, in violation of the applicable ordinances, that were not identified by the trial court. *See Humble Oil & Refining Co. v. Bd. of Aldermen,* 284 N.C. 458, 467, 202 S.E.2d 129, 135 (1974) ("The procedural rules of an administrative agency are binding upon the agency which enacts them as well as upon the public[.]") (quotation marks and citation omitted).

In addition to the ordinance violations, the trial court incorrectly held that the decision of the Board was supported by competent, material and substantial evidence, and therefore also erred in finding that the decision was not arbitrary and capricious. The majority opinion does not address these two issues; however, I choose to do so in order to demonstrate that there are no issues left to be resolved by the Board and therefore striking the conditions is the most appropriate remedy.

## II. Applicable Ordinances—Procedure

### A. Interpretation

The three Town ordinances that are applicable in this case with regard to the procedural requirements for approval or denial of a conditional use permit are Sections 15-54, 15-59, and 15-58.[3] Authority is granted to cities and towns to create such ordinances regulating conditional use permits via N.C. Gen. Stat. § 160A-381 (2007).[4]

---

3. The ordinances in effect at the time of the Board's decision are applied on appeal. *See Carolina Spirits, Inc. v. City of Raleigh,* 127 N.C. App. 745, 747, 493 S.E.2d 283, 285 (1997), *disc. review denied,* 347 N.C. 574, 498 S.E.2d 380 (1998).

4. As it relates to this case, N.C. Gen. Stat. § 160A-381(c) states that "reasonable and appropriate conditions" may be applied to conditional use permits; however, the exact terms of the ordinances enacted in each town must govern the approval process and imposition of conditions. *See Hewett v. County of Brunswick,* 155 N.C. App. 138, 144, 573 S.E.2d 688, 693 (2002) ("[A]ny such conditions [authorized by statute] must be specified in the ordinance.").

The Town of Carrboro Land Use Ordinance Section 15-54(c) states in pertinent part that a conditional use permit "shall" be issued "unless [the Board] concludes, based upon the information submitted at the hearing" that:

(4) If completed as proposed, the development, more probably than not:

a) Will materially endanger the public health or safety; or

b) Will substantially injure the value of adjoining or abutting property; or

c) Will not be in harmony with the area in which it is to be located; or

d) Will not be in general conformity with the Land Use Plan, Thoroughfare Plan, or other plan officially adopted by the Board.

These factors conform to those sanctioned in *Kenan v. Board of Adjustment*, 13 N.C. App., 688, 692-93, 187 S.E.2d 496, 499 (1972).

Ordinance Section 15-59(a) states in pertinent part:

[I]n granting a special or conditional use permit, . . . the Board of Aldermen . . . may attach to the permit *such reasonable requirements* in addition to those specified in this chapter *as will ensure that the development in its proposed location*:

(1) Will not endanger the public health or safety;

(2) Will not injure the value of adjoining or abutting property;

(3) Will be in harmony with the area in which it is located; and

(4) Will be in conformity with the Carrboro Land Use Plan, Thoroughfare Plan, or other plan officially adopted by the Board.

(Emphasis added.) Accordingly, if the permit application is not in compliance with any one of the terms of Section 15-54(c)(4), the Board may completely deny the permit. The reasonable conditions that may be imposed pursuant to Section 15-59 are meant to put the Conditional Use Permit in compliance with Section 15-54 so the permit can then be approved.

Finally, Section 15-58 states in pertinent part:

In considering whether to approve an application for a special or conditional use permit, the board of adjustment or the Board of Alderman shall proceed according to the following format:

(1) The board shall consider whether the application is complete. . . .

(2) The board shall consider whether the application complies with all of the applicable requirements of this chapter. *If a motion to this effect passes, the board need not make further findings concerning such requirements.* If such a motion fails or is not made then a motion shall be made that the application be found not in compliance with one or more of the requirements of this chapter. Such a motion shall specify the particular requirements the application fails to meet. Separate votes may be taken with respect to each requirement not met by the application. *It shall be conclusively presumed that the application complies with all requirements not found by the board to be unsatisfied through this process.*

(3) If the board concludes that the application fails to comply with one or more requirements of this chapter, the application shall be denied. *If the board concludes that all such requirements are met, it shall issue the permit unless it adopts a motion to deny the application for one or more of the reasons set forth in Subdivision 15-54(c)(4). Such a motion shall propose specific findings, based upon the evidence submitted, justifying such a conclusion.*

(Emphasis added.) This ordinance clearly dictates that if all requirements of the Land Use Ordinance are satisfied by the applicant, the Board "shall" issue the permit and need not make further findings. *Id.* However, if the Board finds that the permit is not in compliance with any of the terms set forth in Section 15-54(c)(4), then specific findings for *denial* are required, based on the evidence submitted. *Id.* The statement that "[i]t shall be conclusively presumed that the application complies with all requirements not found by the board to be unsatisfied through this process" reiterates the requirement that findings be made. *Id.*

In sum, after reviewing these ordinances *in pari matera*, in order to apply conditions to a conditional use permit, the Board is required to first establish grounds for denying a permit pursuant to Section 15-54(c). Specific findings are required "justifying such a conclusion." Section 15-58(3). Upon making the appropriate findings, the Board may then apply *reasonable* conditions to bring the permit back into compliance so that it can be granted.[5] Section 15-59(a). However, if the application is complete on its face, complies with the requirements of the Land Use Ordinance, and no information presented at the hearing leads to a denial under the guidelines of Section 15-54, the Board is required to grant the permit without conditions pursuant to the "shall" language contained in the ordinance. Section 15-54(c).[6]

The majority holds:

"[T]he more appropriate reading of the relevant ordinance provisions is that, once the Board voted that 'the application complied with all applicable requirements of the land use ordinance,' it still had the right to either (1) deny the application pursuant to Section 15-54(c)(4) or to (2) adopt conditions pursuant to Section 15-59(a).

The majority's interpretation overlooks the "shall", language in the ordinance. Section 15-54(c) clearly states that the permit "*shall*" be issued unless, *inter alia*, "the development will not comply with one or more requirements of this chapter" or "if completed as proposed, the development, more probably than not[,]" will violate one of the enumerated factors set out in subsection (4). If the Board concludes, based on the evidence presented, that the permit as proposed violates Section 15-54(c)(4), then it must "adopt a motion to *deny* the application." Section 15-58(3). The Board does not even reach the provisions of 15-59(a) governing conditions until it has found a violation of 15-54(c)(4) and made findings regarding the evidence to sup-

---

5. "The board can impose additional unique, project-specific conditions on special and conditional permits. However, it is very important to note that the board does not have the authority to impose any conditions it wants. *Each condition must be related to bringing the project into compliance with the standards for decision already in the zoning ordinance.*" David W. Owens, *Introduction to Zoning* 63-64 (3d ed. 2007) [hereinafter Owens] (emphasis added).

6. I recognize that in the case of *Ward v. Inscoe*, 166 N.C. App. 586, 603 S.E.2d 393 (2004), this Court acknowledged the right of the City of Henderson to impose conditions on a conditional use permit; however, the conditions imposed were not at issue in that case as the appellants were city residents who opposed the issuance of the permit altogether. Moreover, we must focus on the exact language of the ordinances before us in the case *sub judice*.

port its determination to *deny* the permit on that basis. Once this basis for denial is established, then the Board moves on to Section 15-59(a) and may apply conditions. It is not coincidental that the same enumerated factors listed in 15-54(c)(4) are the same factors that serve as a basis for conditions in 15-59(a).

The majority now seeks to remand this case to the Board so it may incorporate findings that were not made and, as discussed *infra*, would not be supported by competent evidence. I cannot concur with that result.

### B. The Board's Violation of These Ordinances

In reviewing the record, the Board did not make the necessary findings in order to apply conditions to the permit.[7] Unlike the majority, I believe that the lack of findings coupled with the Board's clear proclamation that all aspects of the ordinance had been complied with served to prohibit the addition of the contested conditions.

As Northwest notes in its appellate brief, the Board found that the application was complete and that it complied with the Land Use Ordinance. At that point, the permit should have been issued as proposed. In other words, if the proposed permit did not violate any of the enumerated factors in Section 15-54(c), or any other aspect of the Land Use Ordinance, then the permit should have been issued without the conditions in dispute. Section 15-54(c). Nevertheless, the Board proceeded to approve the permit with conditions, without making appropriate findings with regard to Section 15-54(c)(4). If, in fact, condition fifteen was imposed because the ingress/egress on Barnes Street would "materially endanger the public health or safety" under 15-54(c)(4), the Board was required to make findings to that effect "based upon the evidence submitted." Section 15-58(3). "A court will normally defer to a board of adjustment so long as a condition is reasonably related to the proposed use, does not conflict with the zoning ordinance, and furthers a legitimate objective of the zoning ordinance." *Overton*, 155 N.C. App. at 104, 574 S.E.2d at 153.

---

7. "After taking evidence, the board must make written findings of fact. This is necessary to let the parties-and, if the matter is appealed, the courts-know what the board concluded about the facts of the case. A simple written conclusion that the standards were or were not met is not sufficient, nor is a letter just stating the permit has been issued or denied. The findings need to provide enough detail to let the reader know what the board determined the key facts to be. Proposed factual findings can be drafted ahead of time (by the applicant, the opponents, or the staff) and adopted at the meeting, or findings can be composed at the conclusion of the hearing. . . . The board must also provide a written decision applying these facts to the standards of the ordinance." Owens, *supra*, at 56-57.

Here, condition fifteen conflicts with the directives of the zoning ordinance as the appropriate findings were not made.

"[I]n passing upon an application for a special permit, a board of aldermen may not violate at will the regulations it has established for its own procedure; it must comply with the provision of the applicable ordinance." *Humble Oil*, 284 N.C. at 467, 202 S.E.2d at 135. The Board in this case failed to comply with the requirements of the ordinances when it found that the permit application was complete and in compliance with the Land Use Ordinance, but then proceeded to attach conditions two and fifteen to the permit. The trial court erred in not identifying the Board's non-compliance with the Town's ordinances. Because the permit was in compliance with the Land Use Ordinance, as determined by the Board, the conditions imposed were not justified, and thus the trial court should have struck conditions two and fifteen as requested by Northwest.[8] Accordingly, this Court should reverse the trial court's Order as the court did not "[i]nsur[e] that procedures specified by law in both statute and ordinance [were] followed." *Coastal Ready-Mix Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383.[9]

After carefully reviewing the majority's interpretation of the ordinances, I acknowledge that the process of Board approval outlined by the majority would be a legally sound and efficient manner of approv-

---

8. The validity of condition fifteen is the crux of this case and we focus primarily on it. However, in order to strike condition fifteen without invalidating the permit as a whole, condition two must also be stricken from the permit.

9. Though not dispositive, it is pertinent to note that at the close of the second hearing in this matter, Carrboro Mayor Mark Chilton stated: "Well . . . the concern I have about some of the comments I've heard from the board tonight is that . . . basically this project is . . . it's a commercial project—commercial retail project that's proposed . . . in a zoning district that allows that type of commercial retail project. And—it's fundamentally about the size of development that the development ordinance contemplates for the site. . . . And I am inclined to think that there are a number of important conditions that need to be applied to before I would be comfortable with issuing a permit for this project. But, basically, fundamentally, I don't really see a reason—a legally valid reason why the project would be rejected altogether. . . . I would like to hear a motion to move out of the public hearing because I think we're—we need to get to that point where we consider the application in detail and look at . . . what kind of conditions might be acceptable to the board and acceptable to the applicant because there's really not a reason to[,] . . . that I can see to say no to this altogether."

The mayor's statements mirror the townspeople's unease with the development and their desire to impose conditions; however, there must be a legally valid reason for first denying the permit altogether and then applying conditions. As the Mayor suggests, he did not see a reason for denying the permit at that time and, in fact, no findings were ever made that would justify denying the permit.

ing a conditional use permit with reasonable conditions attached; however, the ordinances as written do not support the majority's interpretation. The Town is not prohibited from modifying the ordinances to set up a process by which it can attach reasonable conditions without first finding grounds to deny the permit.

### III. Lack of Competent, Material and Substantial Evidence in the  Whole Record

Before addressing the disposition of this case in further detail *infra*, I first address several of Northwest's remaining arguments which are not addressed by the majority. My determination on these issues further supports my position that there are no matters left to be resolved by the Board on remand.

Northwest argues that the trial court erred in concluding as a matter of law that there was competent, material, and substantial evidence in the whole record supporting the Board's imposition of condition fifteen. I agree. Therefore, assuming *arguendo* that the Board had made the appropriate findings, that the permit as proposed would materially endanger the public health or safety pursuant to Section 15-54(c)(4), I would still find that condition fifteen was not justified as the evidence presented at the hearing would not support such a finding.

Determining whether the decision of a town board was supported by competent, material and substantial evidence requires a whole record review. *Coastal Ready-Mix Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383. In reviewing the trial court's findings of fact, I conclude that "the trial court made its determination 'based upon the record evidence.' Accordingly, [I] conclude that the trial court exercised the proper scope of review. Next . . . [it must be determined] whether the trial court exercised that scope of review correctly." *Howard v. City of Kinston*, 148 N.C. App. 238, 241, 558 S.E.2d 221, 225 (2002).

The general rule with regard to the burden of providing competent, material, and substantial evidence is as follows:

> When an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.

*Humble Oil,* 284 N.C. at 468, 202 S.E.2d at 136. " 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create the suspicion of the existence of the fact to be established . . . .' " *Weaverville Partners, LLC v. Town of Weaverville Zoning Bd. of Adjust.,* 188 N.C. App. 55, 61, 654 S.E.2d 784, 789 (2008) (quoting *Humble Oil,* 284 N.C. at 470-71, 202 S.E.2d at 137).

The Town ordinance in this case, which is in accord with the general rule, is clear on the burden of persuasion. Section 15-55 states in pertinent part:

> (b) Once a complete application has been submitted, the burden of presenting evidence to the permit-issuing board sufficient to lead it to conclude that the application should be denied for any reasons stated in Subdivisions 15-54(c)(1), (3), or (4) shall be upon the party or parties urging this position, unless the information presented by the applicant in his application and at the public hearing is sufficient to justify a reasonable conclusion that a reason exists for denying the application as provided in Subdivision 15-54(c)(1), (3), or (4).

>> (a) The burden of persuasion on the issue of whether the development, if completed as proposed, will comply with the requirements of this chapter remains at all times on the applicant. The burden of persuasion on the issue of whether the application should be turned down for any reason set forth in Subdivision 15-54(c)(4) rests on the party or parties urging that the requested permit should be denied.

Thus, Northwest bore the burden of submitting an application that complied with the Land Use Ordinance, and upon doing so was *prima facie* entitled to approval. *Id.* Those in opposition to the permit as proposed, i.e. the community members who questioned the safety of the Barnes Street entrance/exit, then had the burden of providing competent, material, and substantial evidence that Northwest's application violated 15-54(c)(4). *Id.; Howard,* 148 N.C. App. at 246, 558 S.E.2d at 227 ("[T]he burden of establishing that the approval of a conditional use permit would endanger the public health, safety, and welfare falls upon those who oppose issuance of the permit."). The Board was then obligated to make findings with regard to the violation of Section 15-54(c)(4), and could then impose reasonable conditions to bring the permit back into compliance so it

could be granted. Section 15-58; Section 15-59. As noted *supra*, the Board did not make any findings with regard to 15-54(c)(4), and in fact stated that the permit as proposed complied with all requirements of the Land Use Ordinance. Nevertheless, the trial court, in reviewing the whole record, concluded that there was competent, material, and substantial evidence to support the Board's imposition of condition fifteen.

In the case *sub judice*, the community members in their petition demanded that there be "[n]o vehicular access to the Shoppes at Jones Ferry from Barnes St." The record shows that neither the Planning Board nor any of the advisory boards recommended that the Barnes Street access point be limited to emergency vehicles only, as condition fifteen ultimately dictated. There is no dispute that Northwest's own "Traffic Impact Analysis" ("TIA") showed an increase in traffic around the property, but the report concluded that the estimated increase in traffic did not meet North Carolina Department of Transportation ("NCDOT") warrants for a traffic signal or roundabout, that ten accidents had occurred at the intersection in question in the past five years, and "[t]he traffic analysis indicates that the intersection will operate at an acceptable level of service during both the A.M. and P.M. peak hours." More specifically, the TIA stated that the Barnes Street access point would operate at "Level of Service 'A' " in the A.M. and P.M. peak hours after development. Level of Service A is described as "little or no delay" caused by traffic volume.

At the hearing, Northwest called Lyle Overcash ("Overcash"), a qualified traffic engineer, to testify regarding the TIA. Overcash testified that the intersection was "pretty far away" from DOT's standards for installing a traffic signal primarily because there had been so few accidents, on average, over the last five years.

Due to safety concerns, Northwest agreed to move the access point on Barnes Street closer to Jones Ferry Road and to prohibit delivery, service, and trash pick-up vehicles from utilizing that entrance/exit. Furthermore, Northwest agreed to install a traffic light at the intersection if NCDOT would approve it.

At the hearings, community citizens testified regarding their concerns that additional traffic could lead to "traffic problems" in the neighborhood. Several individuals testified that they personally had been involved in accidents at the Jones Ferry Road/Barnes Street

intersection. However, "[a]n increase in traffic does not necessarily mean an intensification of traffic congestion or a traffic hazard." *Humble Oil*, 284 N.C. at 469, 202 S.E.2d at 136. Furthermore, "none of the residents provided any mathematical studies or factual basis for their opinions regarding how the increased traffic generated from the project would significantly impact the surrounding neighborhood. Rather, all of the residents' testimony consisted of speculative opinions." *Weaverville Partners*, 188 N.C. App. at 64, 654 S.E.2d at 791. The trial court noted in its findings of fact that "[n]o scientific data, surveys, reports or other statistical or empirical data was presented in support of the neighbors' personal observations or involvement."

> A city council may not deny a conditional use permit in their unguided discretion or because, in their view, it would adversely affect the public interest. Moreover, a city council's denial of a conditional use permit based solely upon the generalized objections and concerns of neighboring community members is impermissible. Speculative assertions, mere expression of opinion, and generalized fears about the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body. In other words, the denial of a conditional use permit may not be based on conclusions which are speculative, sentimental, personal, vague, or merely an excuse to prohibit the requested use.

*Howard*, 148 N.C. App. at 246, 558 S.E.2d at 227 (quotation marks and internal citations omitted). Accordingly, based on the whole record, there was not competent, material, and substantial evidence to support the imposition of condition fifteen in this case. The trial court consequently erred in its conclusion of law to the contrary.

### IV. Arbitrary and Capricious

Northwest further argues that the imposition of conditions two and fifteen were arbitrary and capricious. Again, a whole record review is required. *Coastal Ready-Mix Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383. " 'When a Board action is unsupported by competent substantial evidence, such action must be set aside for it is arbitrary.' " *Weaverville Partners*, 188 N.C. App. at 67, 654 S.E.2d at 793 (quoting *MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs*, 169 N.C. App. 809, 811, 610 S.E.2d 794, 796 (2005)). Thus, the Board's actions in this case were arbitrary and capricious as they were not supported by material, competent, and substantial evidence in the

record. The trial court erred in determining that the imposition of conditions two and fifteen were not arbitrary and capricious.[10]

### V. Disposition of the Permit

It has been established in this State, that "a court may not properly modify a permit issued by a board of adjustment or board of commissioners unless there are no administrative decisions remaining or it is clear that the same result would occur on remand." *Overton*, 155 N.C. App. at 109, 574 S.E.2d at 156. It is my position that there are no administrative decisions remaining in this case that would be properly before the Board on remand. The Board found that the permit complied with all requirements of the Land Use Ordinance and failed to establish any findings contra based on competent, material, and substantial evidence. Furthermore, assuming the Board had found that the increase in traffic presented a material danger to public safety, there was not competent, material, and substantial evidence to support such a finding. Accordingly, there are no additional findings to be made by the Board. Because the Board should have granted the permit without the challenged conditions, the trial court erred in failing to strike conditions two and fifteen as requested by Northwest. Accordingly, I would reverse the trial court's order and remand with instruction to strike conditions two and fifteen.

Condition fifteen is the primary focus of this appeal; nevertheless, I would also order the trial court to strike condition two because it states that the entire permit will be deemed invalid if any of the other conditions attached to the permit are found to be invalid. I recognize that in *Overton* a "boilerplate" condition similar to condition two in this case was present in the issued permit; however, it appears that the boilerplate condition was not disputed by the appellant in *Overton. Id.* at 107-08, 574 S.E.2d at 155-56. Nonetheless, this Court held that the trial court was able to strike the two disputed conditions and require the county board of commissioners to reissue the permit. *Id. Overton* suggests that condition fifteen alone can be struck without invalidating the permit; however, here, unlike in *Overton*, appellant Northwest has specifically assigned error to the imposition of condition two, and because the Board found that Northwest complied with all aspects of the Land Use Ordinance, the imposition of both conditions two and fifteen were not justified.

---

10. *Overton*, 155 N.C. App. at 104, 574 S.E.2d at 153-54, sets out the test for determining whether a condition is reasonable, including whether the condition "unreasonably affects the way in which business on the property can be conducted." However, there is no need to address whether condition fifteen was "reasonable" since the condition should not have been attached at all.

## Conclusion

In analyzing the relevant ordinances in this case, I would hold that the Board was required to issue Northwest's requested permit as proposed, absent conditions two and fifteen, because the permit complied with all of the requirements of the Land Use Ordinance. Absent findings that the permit violated one of the provisions of 15-54(c), the Board could not impose conditions, which are meant to bring the permit back into compliance. Furthermore, in reviewing the whole record, there was not competent, material, and substantial evidence to support a finding that the permit, as proposed, would materially endanger the public health or safety. Therefore, the condition was also arbitrary and capricious.

Based on the foregoing, I believe the correct course of action is to reverse the trial court's decision and remand with instruction for the trial court to strike conditions two and fifteen and order the Town to reissue the permit without these conditions.