WEAVERVILLE PARTNERS, LLC, A NORTH CAROLINA LIMITED LIABILITY COMPANY, PETITIONER-APPELLEE v. THE TOWN OF WEAVERVILLE ZONING BOARD OF ADJUSTMENT, RESPONDENT-APPELLANT

No. COA07-185

(Filed 15 January 2008)

## 1. Zoning— superior court review of board of adjustment— standards of review

Although the superior court employed both the whole record and de novo standards when reviewing a board of adjustment decision, the court properly separated the two standards and separately applied them to different issues.

## 2. Zoning— apartment complex—special exception permit— evidence to rebut prima facie case—not substantial

The superior court correctly concluded that the evidence presented to the Weaverville Board of Adjustment rebutting petitioner's prima facie entitlement to a special exception permit for an apartment complex was not supported by competent, material and substantial evidence. At the public hearing, the opponents based their conclusions solely upon their own observations and opinions without providing any expert opinion to quantitatively link their observations to the Boards' denial of the permit.

## 3. Zoning— denial of permit—arbitrary and capricious—insufficient supporting evidence

A board of adjustment acted arbitrarily and capriciously in denying a special exception permit to build an apartment complex where there was no competent, material and substantial evidence in the whole record to support the board's conclusion.

Appeal by respondent from order entered 9 October 2006 by Judge Ronald K. Payne in Buncombe County Superior Court. Heard in the Court of Appeals 19 September 2007.

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Craig D. Justus, for petitioner-appellee.*

*Roberts & Stevens, P.A., by Sarah Patterson Brison, for respondent-appellant.*

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

CALABRIA, Judge.

On 15 November 2005, Weaverville Partners, LLC ("WP") petitioned the trial court to reverse a decision by the Weaverville Zoning Board of Adjustment (the "Board"), denying WP's request for a special exception permit to build a multi-family apartment complex in a Primary Residential District. The trial court reversed the Board's denial of WP's request, and the Board appeals. We affirm.

In July of 2005, WP applied with the Town of Weaverville for a special exception permit ("the permit") to build a 96 unit[1] apartment complex known as Weaverville Crossing. The Unified Housing Development Project ("the project") would be built on three parcels of land, which totaled approximately twelve acres, located south of Weaver Boulevard in the Town of Weaverville. WP planned to build the project on a site zoned R-1 for Primary Residential. The zoning to the east of the proposed site is C-2, general business district, which consists of a number of commercial strip developments, including Ingles grocery store and a gas station.

The proposed property site's northern boundary is a three-lane highway known as Weaver Boulevard and is one of the entrances into the Town of Weaverville. WP's project included an access from Weaver Boulevard as well as an access from Moore Street. Across Weaver Boulevard is a 24 unit apartment complex in an area zoned R-2 Transition Residential District. The zoning to the north of the property is a mixture of R-1 and R-2. The lands to the west and south of the property are principally single-family housing zoned R-1.

On 22 August 2005, the Board held a public hearing to consider WP's proposal. Since Weaverville's Code of Ordinances permitted Unified Housing Developments in the R-1 district subject to obtaining a special exception permit, WP's experts at the hearing included a project engineer, a traffic engineer, and a real estate appraiser to present evidence showing WP's compliance with Weaverville's Code of Ordinances as well as to address concerns. Also present at the hearing were Weaverville residents to address their concerns about the project. Some of their concerns included the traffic generated from the proposed development, pedestrian conflicts on Moore Street, the compatibility of the project with the R-1 uses, and the potential impact on property values.

---

1. WP initially proposed building a 96 unit complex. Later, the number of apartment units was reduced from 96 to 90.

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

On 18 October 2005, the Board denied WP's request for the permit, concluding that the proposed project did not comply with subparagraphs (1) through (4) of Section 36-238 of Weaverville's Code of Ordinances. On 15 November 2005, WP filed a petition, and the trial court issued, a writ of certiorari for judicial review of the Board's decision. On 9 October 2006, the trial court's order reversed the Board's decision and directed the Board to issue the permit for the project. The Board appeals.

On appeal, the Board asserts the trial court erred in (i) applying the *de novo* standard of review; (ii) reversing the Board's decision because there was competent, material and substantial evidence in the whole record to support the Board's decision; and (iii) concluding as a matter of law that the Board acted arbitrarily and capriciously. We disagree.

"A legislative body such as the Board, when granting or denying a conditional use permit, sits as a quasi-judicial body." *Sun Suites Holdings, L.L.C. v. Board of Aldermen of Garner*, 139 N.C. App. 269, 271, 533 S.E.2d 525, 527 (2000). In this capacity, the Board's decisions "shall be subject to review by the superior court by proceedings in the nature of certiorari . . . wherein the superior court sits as an appellate court, and not as a trier of facts." *Tate Terrace Realty Investors, Inc. v. Currituck County*, 127 N.C. App. 212, 217, 488 S.E.2d 845, 848 (1997) (internal quotation marks omitted) (citations omitted).

"[W]e note that a trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is competent evidence to support them, even though there may be evidence that would support findings to the contrary." *Biemann & Rowell Co. v. Donohoe Cos.*, 147 N.C. App. 239, 242, 556 S.E.2d 1, 4 (2001). "On the other hand, '[c]onclusions of law are entirely reviewable on appeal.' " *County of Moore v. Humane Soc'y of Moore Cty.*, 157 N.C. App. 293, 296, 578 S.E.2d 682, 684 (2003) (quoting *Creech v. Ranmar Properties*, 146 N.C. App. 97, 100, 551 S.E.2d 224, 227 (2001)).

I. Trial court's standard of review

**[1]** The Board first argues that the trial court erred as a matter of law in failing to apply the correct standard of review of the Board's decision.

When the superior court reviews the decision of a zoning board, the court should:

58 IN THE COURT OF APPEALS

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

(1) review the record for errors of law[;] (2) ensure that procedures specified by law in both statute and ordinance are followed[;] (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.

*Humane Soc'y of Moore Cty., Inc. v. Town of Southern Pines*, 161 N.C. App. 625, 628-29, 589 S.E.2d 162, 165 (2003) (quoting *Whiteco Outdoor Adver. v. Johnson County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999)).

"The trial court, when sitting as an appellate court to review [a decision of a quasi-judicial body], must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 342 (1999). "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Sun Suites Holdings*, 139 N.C. App. at 273, 533 S.E.2d at 528 (internal quotation omitted).

"When a party alleges an error of law in the Council's decision, the reviewing court examines the record *de novo*, considering the matter anew. However, when the party alleges that the decision is arbitrary and capricious or unsupported by substantial competent evidence, the court reviews the whole record." *Humane Soc'y of Moore Cty.*, 161 N.C. App. at 629, 589 S.E.2d at 165 (citations omitted).

In applying the "whole record" test, the superior court must "review . . . all competent evidence to determine whether the agency's decision was supported by substantial evidence." *Sutton*, 132 N.C. App. at 388, 511 S.E.2d at 341. However, in applying the *de novo* review, the superior court is free to substitute its own judgment for the agency's judgment. *Id.*, 132 N.C. App. at 388-89, 511 S.E.2d at 341. "A court may properly employ both standards of review in a specific case, but the standards are to be applied separately to discrete issues." *Sun Suites Holdings*, 139 N.C. App. at 273-74, 533 S.E.2d at 528 (citations omitted).

In the case *sub judice*, the Board argues that WP asked the trial court to review the Board's decision to determine if the deci-

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

sion was supported by competent, material and substantial evidence; therefore, the trial court incorrectly applied the *de novo* standard of review. However, WP disagrees. WP argues that the petition to the superior court asserted the Board committed an error of law; therefore, the superior court correctly applied the *de novo* standard of review.

The superior court states in its conclusions of law, "[b]ased upon the . . . undisputed findings of fact and, after applying *de novo* review for Conclusions 1-7 . . . and the 'whole record' test for Conclusions 8-12 . . ., this Court concludes as follows[.]" Thus, the trial court properly separated the two standards of review. Additionally, the court found in its conclusions of law numbered 1-7:

1. Petitioner presented in the record at the Public Hearing competent, material and substantial evidence constituting a *prima facie* showing of compliance with all of the standards for special exceptions set forth in the Town's zoning ordinance for developing the Project on the Property.

2. The Board committed errors of law in finding and concluding in the Board's Decision that the testimony of the opposition to the Project constituted competent, material and substantial evidence that could legally support its conclusions denying Petitioner's Permit for the Project.

3. . . . Specifically, findings #28-41, 46-59 of the Board's decision relate to testimony that does not constitute competent, material or substantial evidence as a matter of law.

4. The testimony of Bud Taylor as noted in findings #42-45 of the Board's Decision was not competent, material or substantial evidence as a matter of law . . . .

5. The testimony of Leslie Osborne as noted in findings #46-48 of the Board's Decision was not competent as a matter of law in that she never provided competent and substantial evidence that the Project would cause the property values in the neighborhood to substantially diminish as required by Section 36-238(2) of the Town's zoning ordinance.

6. There is no competent evidence in the record, as a matter of law, supporting a conclusion that the Project would substantially diminish property values within the neighborhood . . . .

60 IN THE COURT OF APPEALS

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

7. The Board committed errors of law in basing its Conclusions #1-4 of its Decision on testimony that was not competent, material or substantial evidence.

In its conclusions of law numbered 1-7, the superior court considered the matter anew and re-weighed the evidence; therefore, the superior court correctly applied the *de novo* standard of review.

Furthermore, in its conclusions of law numbered 8-12, the superior court reviewed the record and determined:

8. Petitioner presented competent, material and substantial evidence in the record showing a *prima facie* case for entitlement to the Permit for the Project on the Property.

9. There was no competent, material and substantial evidence in the record to support the Board's conclusions denying Petitioner's Permit . . . .

10. In the Board's Decision, the Project complies with Sections 36-238(5) and (6) of the Town's zoning ordinance, which expressly addressed the adequacy of access roads and the adequacy of measures to minimize traffic congestion. There is no competent evidence in the record to support a finding to the contrary.

11. The inclusion of a Unified Housing Development use in the R-1 district constitutes a *prima facie* case that said permitted use is in harmony with the general zoning plan for the neighborhood. . . . There is no competent evidence in the record to support a finding to the contrary, only generalized concerns regarding the possible effects of the Project.

12. Because there was no competent, material and substantial evidence in the record to support the Board's Decision to deny the Permit, the Board acted arbitrarily and capriciously.

The superior court held since "[t]here is no competent evidence in the record to support a finding to the contrary," the Board's decision to deny the permit was not supported by competent, material and substantial evidence in the record. In reaching this conclusion, the superior court did not substitute its judgment for that of the Board. Rather, the superior court reviewed all the evidence in the record, but did not weigh the credibility of the evidence to reach this conclusion.

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App, 55 (2008)]

Therefore, although the superior court employed both the *de novo* standard and "whole record" standards of review in reaching its conclusions of law, the court properly separated the two standards, and separately applied them to different issues. This assignment of error is overruled.

II. Competent, material and substantial evidence

**[2]** The Board next argues there was competent, material and substantial evidence in the whole record to support its denial of WP's request for the permit.

Our Supreme Court has stated:

> When an applicant has produced competent, material, and substantial evidence *tending to establish the existence of the* facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.

*Refining Co. v. Board of Aldermen*, 284 N.C. 458, 468, 202 S.E.2d 129, 136 (1974). Substantial evidence has been defined as:

> Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create the suspicion of the existence of the fact to be established. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.

*Id.*, 284 N.C. at 470-71, 202 S.E.2d at 137 (internal quotation marks omitted) (citations omitted). "The issue of whether substantial competent evidence is contained in the record is a conclusion of law and reviewable by this Court *de novo*." *MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs*, 169 N.C. App. 809, 811, 610 S.E.2d 794, 796 (2005).

In the case *sub judice*, the Board does not argue that WP failed to produce competent, material and substantial evidence establishing a *prima facie* entitlement to the permit. Thus, the only issue on appeal is whether the Board's findings of fact denying WP's permit were "supported by competent, material and substantial evidence

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

appearing in the whole record." *Refining Co.*, 284 N.C. at 468, 202 S.E.2d at 136.

Weaverville's Code of Ordinances allows unified housing developments in R-1 primary residential districts, "provided such developments meet the requirements of section 36-241." Section 36-241 sets forth specific technical, objective requirements for permitting unified housing developments, including density, parking and access. In addition to the technical requirements listed in Section 36-241, Weaverville's Code of Ordinances Section 36-238 also provides general standards the Board must consider before approving a unified housing development. Section 36-238 states in relevant part:

No special exception permit shall be issued unless the zoning board of adjustment shall find that:

1. The establishment, maintenance, or operation of the special exception will not be detrimental to or endanger the public health, safety, morals, comfort, or general welfare.

2. The special exception will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted nor substantially diminish and impair property values within the neighborhood.

3. The establishment of the special exception will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district.

4. The exterior architectural appeal and functional plan of any proposed structure will not be so at variance with the exterior architectural appeal and functional plan of the structures already constructed or in the course of construction in the immediate neighborhood or with the character of the applicable district as to cause a substantial depreciation in the property values within the neighborhood.

5. Adequate utilities, access roads, drainage and/or other necessary facilities have been, are being or will be provided.

6. Adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets.

7. The special exception shall, in all other respects, conform to the applicable regulations of the district in which it is located,

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

except as such regulations may, in each instance, be modified by the zoning board of adjustment.

In its order denying WP's request, the Board concluded that WP had failed to satisfy the first four standards of Section 36-238. In its conclusions, the Board held:

1. The access road, particularly developing Moore Street as a through street, would create a vehicular and pedestrian safety problem for the neighborhood and the proposed project would be detrimental to or endanger the public health, safety, morals, comfort or general welfare of the neighborhood and will not, therefore, comply with . . . the Code of Ordinances.

2. The proposed project will be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted and will substantially diminish and impair property values in the neighborhood and will not, therefore, comply with . . . the Code of Ordinances.

3. The proposed project will impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district and will not, therefore, comply with . . . the Code of Ordinances.

4. The exterior architectural appeal and functional plan of the proposed structures will be so at variance with the exterior architectural appeal and functional plan of the structures already constructed or in the course of construction in the immediate neighborhood or with the character of the applicable district as to cause a substantial depreciation in the property values within the neighborhood and will not, therefore, comply with . . . the Code of Ordinances.

"Speculative assertions and mere opinion evidence do not constitute competent evidence." *MCC Outdoor,* 169 N.C. App. at 815, 610 S.E.2d at 798. "Further, the expression of generalized fears does not constitute a competent basis for denial of a permit." *Sun Suites Holdings,* 139 N.C. App. at 276, 533 S.E.2d at 530 (internal quotation marks omitted) (citation omitted).

In *Cumulus Broadcasting,* this Court addressed the issue of whether a witness' personal knowledge may be used to rebut an expert's quantitative data in support of granting a petitioner's application for a permit. *Cumulus Broadcasting, LLC v. Hoke Cty. Bd. of*

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

*Comm'rs,* 180 N.C. App. 424, 638 S.E.2d 12 (2006). Cumulus Broadcasting, LLC ("Cumulus") applied to Hoke County's Planning Department for a conditional use permit to construct a radio tower. *Id.,* 180 N.C. App. at 425, 638 S.E.2d at 14. The Planning Board voted to deny the permit and approximately one month later the Commission held a public hearing. *Id.* After the Commission denied Cumulus's application, Cumulus appealed to the superior court, and the court reversed the Commission's decision. *Id.* In affirming the superior court, this Court held, "[h]ere, the testimony in opposition to the granting of the conditional use permit was from witnesses relying solely upon their personal knowledge and observations. *No witnesses rebutted Cumulus's quantitative data* and other evidence in support of the conditional use permit." *Id.,* 180 N.C. App. at 430, 638 S.E.2d at 17 (emphasis added).

a. Projected traffic

At the public hearing, WP presented the testimony of Ken Putnam ("Mr. Putnam"), a traffic engineer, to address the Board's concerns about the increased traffic. Mr. Putnam testified that based on his traffic engineering experience, Weaverville's road plan was adequate to handle the projected traffic from the project. In reaching this conclusion, Mr. Putnam used the nationally accepted methodology, the "trip generation methodology." He also testified that in his opinion, the developer took every practical step to minimize the traffic congestion.

Opponents testified that the project's increased traffic would cause a significant impact on the adjacent residential neighborhood since children and elderly residents walk on the streets. The opponents who testified about the project's increased traffic were all residents of the Town of Weaverville. The residents stated that WP's expert testimony concerning the traffic was "absurd." The residents reasoned that WP's traffic study failed to include the drivers who will take a shortcut through the neighborhood in order to bypass the traffic on the main road, Weaver Boulevard. However, none of the residents provided any mathematical studies or factual basis for their opinions regarding how the increased traffic generated from the project would significantly impact the surrounding neighborhood. Rather, all of the residents' testimony consisted of speculative opinions. Furthermore, the court found the project complied with Weaverville's zoning ordinance regarding the adequacy of measures to minimize traffic congestion and there was no competent evidence to support a finding to the contrary.

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

b. Property values

WP presented the testimony of Mark Morris ("Mr. Morris"), a real estate appraiser, regarding the project's impact on property values. Mr. Morris testified that based upon his market analysis and his review of the architectural plans submitted, the proposed project "will not be injurious to the use and enjoyment of other property in the immediate vicinity . . . nor substantially diminish and impair property values within the neighborhood."

Mr. Morris conducted a market study of similarly situated neighborhoods in Weaverville, and was able to opine that property values in close proximity to other apartment complexes increased, rather than decreased. In reaching this conclusion, Mr. Morris looked at all the properties adjoining the proposed project, all the surrounding properties, and the sales histories for the last ten years. He also interviewed people to determine what motivated them to buy property near the proposed project. Furthermore, while the Board's conclusion of law #2 states the proposed project "will substantially diminish and impair property values in the neighborhood," the neighborhood already includes a shopping center and a gas station, as well as other commercial and multi-family uses.

Mr. Morris' review also included the architectural features of the project and concluded the project's architectural structure will not cause substantial depreciation of the property values within the immediate neighborhood. Additionally, WP offered to increase buffers and place shields on outdoor lighting, place no trespassing signs on the property, place additional trees on the property, and alter the architectural plans, to include changing the proposed vinyl siding.

The opponents presented the testimony of two witnesses, Bud Taylor ("Taylor") and Leslie Osborne ("Osborne"), regarding the project's effect on property values in the neighborhood. Taylor reviewed property appreciation rates in Buncombe County as a whole, and neighborhoods that included apartments and neighborhoods without apartments in the City of Asheville. He opined that the project would slow appreciation rates and create longer marketing time. However, Taylor testified he could not state "there's going to be diminution in property value immediately." Furthermore, Taylor did not conduct any market studies of neighborhoods in the Town of Weaverville that shared similar characteristics to the neighborhood adjoining the project's site.

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

Osborne, a realtor, testified that she was involved as an agent in "several of the transactions that Mr. Morris brought up" in his market study. Osborne inferred that because there were "grave concerns" regarding the close proximity of apartments in several locations that Mr. Morris previously discussed, the sales price for the property located near the apartments was below the asking price. However, Osborne testified that although the close proximity of the apartments was a hot topic, surprisingly "the buyers went ahead and purchased" the property.

Section 36-238 of Weaverville's Code of Ordinances states in relevant part:

> 2. The special exception will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted nor substantially diminish and impair property values within the neighborhood.

Osborne's testimony failed to show that the property values of previous transactions were "substantially diminish[ed]" by the close proximity to other apartments. Furthermore, Osborne's testimony also failed to show that property values in the neighborhoods located near the proposed project would be "substantially diminish[ed]" by their close proximity to the proposed project.

c. Crime rate

One Weaverville resident determined that apartment complexes have a much higher crime rate after reading reports from the Cambridge, Massachusetts Police Department and City of Charleston Police Department. Another resident testified, "All you have to do is read the Asheville paper. Most of the drug busts and murders are in apartment units around the City of Asheville." Neither one of the residents provided any factual basis for their opinions and the testimony of all the residents who testified consisted of speculative opinions and generalized fears.

d. Architectural appeal

Opponents testified regarding the architectural appeal of the proposed project. They believed it would violate Section 36-238(4) of Weaverville's Code of Ordinances since the project's exterior architectural appeal would be at variance with the current architectural appeal of the structures already located in the immediate neighborhood. To illustrate their testimony, opponents presented numerous

WEAVERVILLE PARTNERS, LLC v. TOWN OF WEAVERVILLE ZONING BD. OF ADJUST.

[188 N.C. App. 55 (2008)]

photographs showing the exteriors of residential dwellings in the area close to the proposed project to attempt to demonstrate how the proposed project's architectural appeal violated Weaverville's Code of Ordinances. However, their testimony was based solely on their personal knowledge and observations. The witnesses did not provide any expert testimony to show any quantitative link between their personal observations and how the project's exterior architectural appeal would "cause a substantial depreciation in the property values within the neighborhood."

Thus, at the public hearing, the opponents based their conclusions solely upon their own observations and opinions without providing any expert opinion to quantitatively link their observations to the Board's denial of the permit. As such, we conclude this evidence fails to qualify as "substantial evidence," such that a "reasonable mind" could accept "as adequate to support a conclusion." *Refining Co.*, 284 N.C. at 470-71, 202 S.E.2d at 137. Therefore, after reviewing the whole record, we affirm the superior court's conclusion that the evidence presented to the Board rebutting WP's *prima facie* entitlement to the permit was not supported by competent, material and substantial evidence. This assignment of error is overruled.

III. Arbitrary and capricious

[3] Lastly, the Board argues that the superior court erred in concluding that it acted arbitrarily and capriciously. "When a Board action is unsupported by competent substantial evidence, such action must be set aside for it is arbitrary." *MCC Outdoor*, 169 N.C. App. at 811, 610 S.E.2d at 796. "An arbitrary decision . . . is one where there is no substantial relationship between the facts in the record and the conclusions reached by the quasi-judicial body." *Tate Terrace Realty Investors*, 127 N.C. App. at 223, 488 S.E.2d at 851. Since there was no competent, material and substantial evidence in the whole record to support the Board's conclusion to deny WP's request for the permit, we affirm the superior court's conclusion that the Board acted arbitrarily and capriciously. This assignment of error is overruled.

IV. Conclusion

The superior court applied the proper standard of review to the Board's order. In addition, the superior court did not err in finding there was insufficient competent, material and substantial evidence in the whole record to rebut WP's *prima facie* entitlement to the permit. Finally, the superior court did not err in reversing the Board's

68 IN THE COURT OF APPEALS

GOOD HOPE HEALTH SYS., LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[188 N.C. App. 68 (2008)]

order and concluding that the Board acted arbitrarily and capriciously in denying WP's request for a permit. The order of the superior court is affirmed.

Affirmed.

Judges McCULLOUGH and STEPHENS concur.