An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-604

Filed 7 January 2026

Mecklenburg County, No. 23CVS015944-590

SANDERS PARTNERSHIP, LLC, and DEW GREEN LCID, LLC, Petitioners,

v.

CITY OF CHARLOTTE, Respondent.

Appeal by Respondent from order entered 15 February 2024 by Judge Peter B. Knight in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 April 2025.

> *Office of the City Attorney, by Senior Assistant City Attorney Jill Y. Sanchez-Myers and Nicole Hewitt, for Respondent-Appellant.*

> *Murray Law Firm, PLLC, by David William Murray, for Petitioners-Appellees.*

CARPENTER, Judge.

The City of Charlotte (the "City") appeals from the superior court's 15 February 2024 order (the "Order"), reversing the zoning variance decision (the "Decision") by Charlotte's Unified Development Board of Adjustment (the "Board"). In the Decision, the Board denied a zoning variance application from Sanders Partnership, LLC and Dew Green LCID, LLC (collectively, "Petitioners"). On appeal, the City argues: (1)

the superior court erred by reversing the Decision; (2) the superior court erred by making additional findings of fact in the Order; and (3) we must remand for the Board to make additional findings of fact. After careful review, we affirm the Order.

## I. Factual & Procedural Background

Petitioners own six parcels of land, totaling approximately 62.5 acres, at the corner of Pleasant Grove Road and Kelly Road in Charlotte, North Carolina (the "Property"). Per the City's zoning ordinance (the "Ordinance"), the Property is zoned as a R-3 single family residential property.

Petitioners desire to construct a Land Clearing and Inert Debris Landfill ("LCID") on the Property. The Ordinance defines an LCID as a "facility for the land disposal of inert debris, land clearing debris, yard trash and untreated and unpainted wood."[1] Charlotte, N.C., Zoning Ordinance § 2.201. An LCID is only permitted in R-3 zones if eight prescribed conditions in the Ordinance are met. *Id.* § 12.503. One condition requires road access to the LCID be provided from "any other street that is not a part of a residential local or residential collector street." *Id.*

Sometime in 2019, a zoning administrator interpreted Kelly Road as a residential collector street. Kelly Road is a two-lane road that has few residential properties. Even though "there are some developers potentially trying to buy up

---

[1] Opposition testimony presented at the Board's hearing tended to show the Ordinance was amended almost one year after Petitioners applied for their LCID. Pursuant to the amendment, R-3 zones "no longer allow" LCIDs. Because Petitioners applied for an LCID before the amendment, they were "grandfathered in" and allowed to continue pursuing an LCID.

property" on Kelly Road, such as a "potential town home development," the area remains "largely undeveloped." An animal farm is located on Kelly Road across from the Property. The North Carolina Department of Transportation ("NCDOT") maintains "Trucks Entering Highway" signs on Kelly Road immediately adjacent to the Property. These signs were originally erected because the northern portion of the Property, which only has street access from Kelly Road, was previously used as an LCID from 1992 to 2004. Similarly, the Kelly Road Landfill is located directly across Kelly Road from the Property and was operating as an LCID as recently as 2022. The only street access to the Kelly Road Landfill was on Kelly Road. The City issued permits to the Kelly Road Landfill for its operation as an LCID as recently as 2009.

Pleasant Grove Road is not a residential collector street and is a two-lane road until it meets the entrance of the Sutton Farms subdivision on Linhay Drive. Pleasant Grove Road and Kelly Road are maintained by NCDOT, which controls the issuance of road entrance permits to the Property. Because Kelly Road is a residential collector street and thus cannot serve as an LCID entrance under the Ordinance, Petitioners requested NCDOT approve a Pleasant Grove Road entrance to the Property. NCDOT denied Petitioners' request because of Pleasant Grove Road's close proximity to Linhay Drive and the entrance to the Sutton Farms subdivision. NCDOT explained that it denied Petitioners' request to avoid creating "conflict points . . . specifically related to pedestrians and vehicles." When denying Petitioners' request, NCDOT determined the LCID entrance should be on Kelly Road.

NCDOT's denial prevented Petitioners from meeting all of the Ordinance's LCID requirements. As a result, on 24 May 2023, Petitioners submitted a variance application to the Board seeking a variance from the Ordinance. Specifically, Petitioners requested a variance from the LCID condition that vehicular access be provided from "any other street that is not a part of a residential local or residential collector street." *See id.* In other words, Petitioners sought to use Kelly Road for the LCID entrance as NCDOT recommended. On 25 July 2023, the Board conducted a hearing on the matter.

Following the hearing, the Board determined Petitioners did not meet three of the four requirements for a variance. Subsequently, the Board entered the Decision denying Petitioners' variance application, supported by findings of fact and conclusions of law. In particular, the Board concluded that:

1. Unnecessary hardships would not result from the strict application of the Ordinance.
2. The hardship does not result from conditions that are peculiar to the [P]roperty (location, size or topography).
3. The hardship does not result from actions taken by [Petitioners].
4. The requested variance is not consistent with the spirit, purpose, and intent of the [ ] Ordinance, in that the public safety is secured and substantial justice is achieved.

On 8 September 2023, Petitioners filed a petition for writ of certiorari with the superior court. On appeal to the superior court, Petitioners argued: (1) the Decision's conclusions of law 1, 2, and 4 were erroneous as a matter of law and Petitioners

presented sufficient evidence to demonstrate they were entitled to the variance as a matter of law; (2) the Decision's findings of fact supported granting the variance, so the Decision was unsupported by the evidence; and (3) the Decision was arbitrary and capricious.

On 1 February 2024, the superior court conducted a hearing on the matter. On 14 February 2024, the superior court entered the Order, reversing the Decision and remanding to the Board with instructions to issue Petitioners' requested variance. The superior court determined: (1) the Decision's conclusions of law 1, 2, and 4 were erroneous as a matter of law and Petitioners presented sufficient evidence to demonstrate they were entitled to the variance as a matter of law; (2) the Decision's conclusions of law 1, 2, and 4 were unsupported by the evidence and findings of fact; and (3) the Decision was arbitrary and capricious. On 26 February 2024, the City filed notice of appeal to this Court.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 1-277(a) (2023).

## III. Issues

The issues are whether: (1) the superior court erred in reversing the Decision; (2) the superior court erred by making additional findings of fact in the Order; and (3) this Court must remand for the Board to make additional findings of fact.

## IV. Analysis

The City argues the superior court erred by reversing the Decision. Specifically, the City contends the superior court incorrectly determined that the Decision's conclusions of law 1, 2, and 4 are erroneous as a matter of law and unsupported by sufficient evidence. As a result, according to the City, the superior court also erred by concluding that the Decision was arbitrary and capricious. Finally, the City argues the superior court erred by making additional findings of fact in the Order, and that we must remand for the Board to make additional findings of fact. We disagree.

## A. Standard of Review

"Each of the three levels—the board of adjustment, the superior court, and this Court—has a particular standard of review." *Cook v. Union Cnty. Zoning Bd. of Adjust.*, 185 N.C. App. 582, 585, 649 S.E.2d 458, 463 (2007). A board of adjustment acts as "a quasi-judicial" body and factfinder, *Humble Oil & Refin. Co. v. Bd. of Aldermen*, 284 N.C. 458, 469, 202 S.E.2d 129, 137 (1974), and its decisions are subject to appellate review by the superior court, *Tate Terrace Realty Invs., Inc. v. Currituck Cnty.*, 127 N.C. App. 212, 217, 488 S.E.2d 845, 848 (1997). The superior court decides whether:

> 1) the board committed any errors in law; 2) the board followed lawful procedure; 3) the petitioner was afforded appropriate due process; 4) the board's decision was supported by competent evidence in the whole record; and 5) the board's decision was arbitrary and capricious.

*Cap. Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.*, 152 N.C. App. 474, 475, 567 S.E.2d

440, 441 (2002) (cleaned up). The superior court's standard of review depends on the nature of the challenge to the board of adjustment's decision. *Bailey & Assocs., Inc. v. Wilmington Bd. of Adjust.*, 202 N.C. App. 177, 189, 689 S.E.2d 576, 586 (2010).

"When the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the whole record test." *Mann Media, Inc. v. Randolph Cty. Plan. Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (internal quotation marks and citation omitted). "The 'whole record test' requires the reviewing court to examine all competent evidence . . . to determine whether the agency decision is supported by 'substantial evidence.'" *Amanini v. N.C. Dep't of Hum. Res., N.C. Special Care Ctr.*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994) (quoting *Rector v. N.C. Sheriffs' Educ. & Training Standards Comm.*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991)). "Substantial evidence is that which a reasonable mind would regard as adequately supporting a particular conclusion." *Walker v. N.C. Dep't of Hum. Res.*, 100 N.C. App. 498, 503, 397 S.E.2d 350, 354 (1990).

De novo review applies when the petitioner argues the board's decision was erroneous as a matter of law. *Showcase Realty & Const. Co. v. City of Fayetteville Bd. of Adjust.*, 155 N.C. App. 548, 551, 573 S.E.2d 737, 740 (2002). De novo review also applies to whether the applicant presented "competent, material, and substantial evidence" because that "is a conclusion of law." N.C. Gen. Stat. § 160D-1402(j)(2) (2023) ("Whether the record contains competent, material, and substantial evidence

is a conclusion of law, reviewable de novo."); *Weaverville Partners, LLC v. Town of Weaverville Zoning Bd. of Adjust.*, 188 N.C. App. 55, 59–60, 654 S.E.2d 784, 788 (2008) (concluding the superior court properly applied de novo review to the issue of whether the applicant "presented in the record . . . competent, material and substantial evidence"). Under de novo review, "the superior court considers the matter anew and freely substitutes its own judgment for the agency's judgment." *Mann Media, Inc.*, 356 N.C. at 13, 565 S.E.2d at 17 (cleaned up).

On appeal from the superior court, we consider "whether the superior court applied the correct standard of review, and . . . whether the superior court correctly applied that standard." *Overton v. Camden Cnty.*, 155 N.C. App. 391, 393–94, 574 S.E.2d 157, 160 (2002). When the superior court should have conducted de novo review, we review its decision de novo. *Showcase Realty & Const. Co.*, 155 N.C. App. at 551, 573 S.E.2d at 740.

**B. De Novo Review**

First, Petitioners argued to the superior court that the Decision's conclusions of law 1, 2, and 4 are erroneous as a matter of law and that Petitioners presented sufficient evidence to demonstrate they were entitled to the variance as a matter of law. In its de novo review, the superior court agreed with Petitioners. On appeal to this Court, the City argues the superior court erred by determining that the Decision's conclusions of law 1, 2, and 4 are erroneous as a matter of law. The City also argues the superior court incorrectly applied de novo review, rather than the

whole record test, to the issue of whether Petitioners presented sufficient evidence to show they were entitled to the variance. Finally, the City argues the superior court erred by making additional findings of fact.

Because the superior court conducted a de novo review in considering whether conclusions of law 1, 2, and 4 are erroneous as a matter of law, the superior court applied the correct standard of review. *See id.* at 551, 573 S.E.2d at 740. Similarly, the superior court applied the correct standard of review, de novo review, to the issue of whether Petitioners presented sufficient evidence to show they were entitled to the variance—as that is a conclusion of law. *See* N.C. Gen. Stat. § 160D-140(j)(2); *Weaverville Partners, LLC*, 188 N.C. App. at 59, 654 S.E.2d at 788. We next determine whether the superior court "correctly applied that standard." *See Overton*, 155 N.C. App. at 393–94, 574 S.E.2d at 160.

An applicant for a variance "bear[s] the burden of proving their case and must show what type of variance they need and why the variance is needed." *Robertson v. Zoning Bd. of Adjust. for City of Charlotte*, 167 N.C. App. 531, 534, 605 S.E.2d 723, 726 (2004). An applicant must prove four elements:

> (1) Unnecessary hardship would result from the strict application of the regulation. It is not necessary to demonstrate that, in the absence of the variance, no reasonable use can be made of the property.
> (2) The hardship results from conditions that are peculiar to the property, such as location, size, or topography. Hardships resulting from personal circumstances, as well as hardships resulting from conditions that are common to

the neighborhood or the general public, may not be the basis for granting a variance . . . .

(3) The hardship did not result from actions taken by the applicant or the property owner. The act of purchasing property with knowledge that circumstances exist that may justify the granting of a variance is not a self-created hardship.

(4) The requested variance is consistent with the spirit, purpose, and intent of the regulation, such that public safety is secured and substantial justice is achieved.

N.C. Gen. Stat. § 160D-705(d) (2023). If an applicant meets their burden in proving these four elements, "the board of adjustment *shall* vary any of the provisions of the zoning regulation . . . ." *Id.* (emphasis added).

In the Decision, the Board determined that Petitioners presented sufficient evidence as to only the third element, concluding:

1. Unnecessary hardships would not result from the strict application of the Ordinance.
2. The hardship does not result from conditions that are peculiar to the [P]roperty (location, size or topography).
3. The hardship does not result from actions taken by [Petitioners].
4. The requested variance is not consistent with the spirit, purpose, and intent of the [ ] Ordinance, in that the public safety is secured and substantial justice is achieved.

Therefore, on appeal to the superior court, Petitioners argued conclusions of law 1, 2, and 4 were erroneous as a matter of law and that Petitioners presented sufficient evidence to demonstrate they were entitled to the variance as a matter of law.

**1. Unnecessary Hardship**

- 10 -

"One of the fundamental purposes of zoning boards of adjustment is to provide flexibility and prevent . . . practical difficulties and unnecessary hardships resulting from strict interpretations of zoning ordinances." *Morris Comm. Corp. v. City of Bessemer City Zoning Bd. of Adjust.*, 365 N.C. 152, 159, 712 S.E.2d 868, 873 (2011) (internal quotation marks and citation omitted). Unnecessary hardship occurs when a zoning ordinance denies a property owner " 'reasonable use of his property.' " *Turik v. Town of Surf City*, 182 N.C. App. 427, 434, 642 S.E.2d 251, 255 (2007) (quoting *Williams v. N.C. Dep't of Env. and Nat. Res.*, 144 N.C. App. 479, 487, 548 S.E.2d 793, 798 (2001)). But an unnecessary hardship does not occur when there is only pecuniary loss or when the hardship is "personal in nature . . . ." *Id.* at 434–35, 642 S.E.2d at 255–56 (internal quotation marks and citation omitted).

For example, in *Turik*, a property owner desired to construct a duplex on his property but could not do so in compliance with the relevant zoning ordinance due to conflicting land surveys and a boundary-line dispute with a neighbor. *Id.* at 431, 642 S.E.2d at 254. As a result, the property owner sought a variance from the zoning ordinance. *Id.* at 431, 642 S.E.2d at 254. On appeal, this Court agreed the property owner was entitled to a variance after concluding the conflicting land surveys and boundary-line dispute created an unnecessary hardship. *Id.* at 434, 642 S.E.2d at 256.

Here, the evidence and Board's unchallenged findings of fact demonstrate the following. The Property has two frontage points for road access: one on Pleasant

Grove Road and one on Kelly Road. Kelly Road is a residential collector street, which is impermissible for an LCID entrance under the Ordinance. Pleasant Grove Road is permissible for an LCID entrance. NCDOT, however, determined that Petitioners could not use Pleasant Grove Road for their LCID entrance due to its close proximity to Linhay Drive and the entrance to the Sutton Farms subdivision. Instead, NCDOT determined Petitioners should use Kelly Road for their LCID entrance.

Therefore, Petitioners could only satisfy the Ordinance's LCID requirements by using Pleasant Grove Road for their LCID entrance. But Petitioners could not obtain a permit from NCDOT for a Pleasant Grove entrance. Like the property owner in *Turik*, who was caught in a quandary between conflicting land surveys, a boundary-line dispute, and the relevant zoning ordinance, Petitioners could not operate an LCID on the Property as they desired in strict compliance with the Ordinance without violating NCDOT's determination. *See id.* at 431, 642 S.E.2d at 254. Because the evidence and findings of fact demonstrated that NCDOT's determination denied Petitioners "reasonable use of [their] property," Petitioners experienced an unnecessary hardship. *See id.* at 434, 642 S.E.2d at 255 (quoting *Williams*, 144 N.C. App. at 487, 548 S.E.2d at 798). Accordingly, the superior court did not err by reversing the Board's conclusion that Petitioners did not demonstrate an unnecessary hardship.

### 2. Peculiar Condition

An applicant for a variance must next prove their unnecessary hardship results "from conditions that are peculiar to the property," including but not limited to the "location, size, or topography." N.C. Gen. Stat. § 160D-705(d)(2). But "conditions that are common to the neighborhood or the general public, may not be the basis for granting a variance." *Id.* In *Turik*, concerning the conflicting surveys and boundary-line dispute that prevented a property owner from constructing his desired duplex, this Court agreed with the Board's determination that

> conditions and circumstances exist which are peculiar to the [property owners'] property in that a boundary line dispute does not exist between other landowners in the same district. That other structures in this district have been constructed with no conflicting surveys which creates a unique situation with this property.

182 N.C. App. at 432, 642 S.E.2d at 254.

Here, the evidence and Board's undisputed findings establish that the Property experienced an unnecessary hardship resulting from peculiar conditions. The Board found, and the City conceded at the hearing, that the "combined parcels on which the proposed LCID landfill is located create a project area that is *irregular* in shape." Given the irregular shape, the Board also found that the Property had two entrance points and Pleasant Grove Road was the only road sufficient for an LCID entrance. But NCDOT would only allow an entrance on Kelly Road, which was impermissible for an LCID entrance under the Ordinance as it is a residential collector street. Thus, the evidence and findings of fact demonstrated Petitioners' unnecessary hardship

results from a condition peculiar to the Property. *See id.* at 432, 642 S.E.2d at 254. Accordingly, the superior court did not err by reversing the Board's conclusion that Petitioners did not demonstrate their unnecessary hardship resulted from a peculiar condition.

### 3. Spirit, Purpose, and Intent

While a board of adjustment has the power to grant a variance, "the board is prohibited from authorizing a structure which conflicts with the general purpose of the ordinance . . . ." *Donnelly v. Bd. of Adjust. of Vill. of Pinehurst*, 99 N.C. App. 702, 708, 394 S.E.2d 246, 250 (1990). Therefore, a variance applicant must demonstrate the requested variance is "consistent with the spirit, purpose, and intent of the regulation, such that public safety is secured and substantial justice is achieved." N.C. Gen. Stat. § 160D-705.

Petitioners presented evidence demonstrating that Kelly Road is a residential collector street, which the Ordinance defines as a road "which assembles traffic from local streets and distributes it to the nearest arterial street, providing direct primary access to low/medium density land uses and designed to carry low to moderate traffic volumes at low to moderate speeds." Charlotte, N.C., Zoning Ordinance § 2.201. A residential local street, which the Ordinance combines with collector streets when describing impermissible streets for LCID entrances, is defined as a "two-lane roadway which provides access directly to adjoining low/medium density land uses and conducts traffic to local limited and Class V streets which serve the area. The

Class VI road is designed to accommodate low volumes of traffic at low speeds." *Id.* In addition, the Ordinance's LCID conditions prescribe: "All driveways which serve the site must be wide enough to accommodate two-way traffic at all times, and an area on the site must be provided to accommodate vehicles entering the site so that no traffic waiting to enter the site will be backed up on any public right-of-way." *Id.* § 12.503. Based on the plain language of the Ordinance, including its focus on controlling traffic in a residential area, the primary purpose behind the Ordinance's LCID requirements is to address traffic conflicts and pedestrian safety in residential zones while also allowing LCIDs to be constructed.

Petitioners demonstrated that the City previously allowed multiple LCIDs to operate with entrances on Kelly Road—the Kelly Road Landfill and the LCID that previously existed on the Property. Despite the City's determination that Kelly Road is a residential collector street, which occurred sometime in 2019, the Kelly Road Landfill operated as an LCID with its entrance on Kelly Road as recently as 2022. In addition, NCDOT would not allow Petitioners to operate an LCID entrance on Pleasant Grove Road due to NCDOT's concerns for pedestrian safety and traffic conflict involving Linhay Drive and the entrance to Sutton Farms subdivision, which are close in proximity to Petitioners' proposed LCID entrance on Pleasant Grove Road. With this safety concern in mind, NCDOT recommended Kelly Road for an LCID entrance as Kelly Road did not experience the same conflict points and potential traffic concerns.

Accordingly, granting the variance and allowing Petitioners to operate an LCID entrance on Kelly Road would not violate the spirit, purpose, and intent of the Ordinance. Indeed, NCDOT's primary concern was safety and minimizing traffic conflicts in a residential zone—the reason NCDOT recommended the entrance be on Kelly Road rather than Pleasant Grove Road. Similarly, NCDOT continues to maintain "Trucks Entering Highway" signs near the location of Petitioners' proposed LCID entrance on Kelly Road and Kelly Road has few residential properties. We cannot consider uncertain future events, such as whether developers are "potentially" purchasing property on Kelly Road for housing developments.

Strikingly, in opposition to the City's argument that an LCID entrance on Kelly Road poses safety and traffic concerns, the Ordinance allows Petitioners to operate an LCID entrance on Pleasant Grove Road despite its close proximity to the Sutton Farms subdivision—a safety and traffic concern noted by NCDOT when it denied Petitioners' permit request. Thus, Petitioners' requested variance does not conflict with the general spirit, purpose, and intent of the Ordinance. *See Donnelly*, 99 N.C. App. at 708, 394 S.E.2d at 250. Accordingly, the superior court did not err by reversing the Board's conclusion that Petitioners did not demonstrate their requested variance does not conflict with the general spirit, purpose, and intent of the Ordinance.

The City also argues that by granting the variance, the Board would be effectively "legislatively amending the Ordinance . . . in violation of the Board's

authority." But a board of adjustment must grant variances should an applicant prove all elements warranting a variance. N.C. Gen. Stat. § 160D-705 (explaining a board of adjustment "*shall* vary any of the provisions of the zoning regulation upon a showing" of all four variance elements) (emphasis added). The Ordinance adopts the requirements of section 160D-705—demonstrating the Ordinance was created by the City to allow variances to the Ordinance's requirements, such as those for LCIDs, should an applicant establish the four variance elements. Therefore, the City's argument is meritless.

### 4. Additional Findings of Fact

The City argues the superior court erred in making additional findings of fact. In reviewing an appeal from a board of adjustment, a superior court is without authority to "make additional findings." *Batch v. Town of Chapel Hill*, 326 N.C. 1, 11, 387 S.E.2d 655, 662 (1990); *Deffet Rentals, Inc. v. City of Burlington*, 27 N.C. App. 361, 364, 219 S.E.2d 223, 226 (1975) ("It is not the function of the reviewing court . . . to find the facts but to determine whether the findings of fact made by the Board are supported by the evidence before the Board and whether the Board made sufficient findings of fact."). But we have also recognized that "a recitation of largely uncontroverted evidence" by a superior court in reviewing a local decision is not prejudicial error. *Cannon v. Zoning Bd. of Adjust. of City of Wilmington*, 65 N.C. App. 44, 47, 308 S.E.2d 735, 737 (1983).

Although the superior court's order contains findings of fact not included in the Decision, the superior court's findings of fact recite the Board's findings of fact and synthesize the evidence presented to the Board. The superior court's findings are also uncontroverted by the evidence. Therefore, even if the superior court did err, it did not prejudicially err. *See id.* at 47, 308 S.E.2d at 737; *Turik*, 182 N.C. App. at 430–31, 642 S.E.2d at 253 ("In this case, the superior court did not substitute its own judgment for that of the Board's, but essentially repeated the Board's findings and summarized the procedural history of the case.")

## C. **Whole Record Test**

On appeal to the superior court, Petitioners next argued that because "all of the Board's findings of fact supported granting the variance, the Decision was unsupported by substantial, competent evidence and the Decision was arbitrary and capricious." After conducting the whole record test, the superior court determined the Decision's findings of fact were supported by the evidence. The superior court, however, concluded that conclusions of law 1, 2, and 4 were unsupported by the findings of fact and not supported by sufficient evidence. As a result, the superior court also determined the Decision was arbitrary and capricious. The City argues the superior court erred because conclusions of law 1, 2, and 4 are supported by the findings of fact and sufficient evidence, and as a result, the Decision was not arbitrary and capricious.

The superior court applied the whole record test in considering whether the Decision was supported by sufficient evidence and whether it was arbitrary and capricious. Accordingly, the superior court applied the correct standard of review. *See Overton*, 155 N.C. App. at 393, 574 S.E.2d at 159–60. We next determine whether the superior court "correctly applied that standard." *See id.* at 393–94, 574 S.E.2d at 160.

The record shows the Board heard testimony demonstrating the following. The Property is irregular in shape, with frontage points fit for a road entrance on Kelly Road and Pleasant Grove Road. Kelly Road was interpreted to be a residential collector street sometime in 2019. Despite this interpretation, the Kelly Road Landfill operated as an LCID with an entrance on Kelly Road as recently as 2022. Kelly Road has few residential properties and there is an animal farm across from the Property. In addition, NCDOT still maintains "Trucks Entering Highway" signs on Kelly Road immediately adjacent to the Property. Petitioners requested a permit for a Pleasant Grove Road entrance to the Property for their LCID, as it is not a residential local or collector street and allowable as an entrance under the Ordinance, but NCDOT denied the request due to its concerns for pedestrian safety and traffic conflicts. Specifically, NCDOT was concerned about the proposed entrance's proximity to Linhay Drive and the entrance to the Sutton Farms subdivision. Instead, NCDOT recommended the entrance be on Kelly Road. Traffic conflict and safety concerns are the purpose of the Ordinance's LCID requirements, including the

requirement that an LCID does not operate with an entrance on a residential local or collector street. But the Ordinance would allow an LCID entrance on Pleasant Grove Road despite the established concerns for pedestrian safety and traffic conflict regarding Linhay Drive and the Sutton Farms subdivision.

After reviewing the whole record and the Board's undisputed findings of fact, sufficient evidence does not support the Decision because conclusions 1, 2, and 4 are not supported by the evidence. Indeed, the evidence supports granting the variance— not denying the variance. *See Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118. Because the Decision was unsupported by sufficient evidence, it was also arbitrary and capricious. *See Weaverville Partners*, LLC, 188 N.C. App. at 67, 654 S.E.2d at 792; *MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs*, 169 N.C. App. 809, 811, 610 S.E.2d 794, 796 (2005) ("When a Board action is unsupported by competent substantial evidence, such action must be set aside for it is arbitrary."). Accordingly, the superior court did not err by concluding the Decision was unsupported by sufficient evidence and was arbitrary and capricious.

Alternatively, the City argues that we must remand for the Board to make additional findings of fact if we determine: (1) the Board's findings of fact did not resolve all contested issues of fact necessary to arrive at its conclusions of law, or (2) this Court cannot properly perform its review function due to insufficient findings. Because we did not make these determinations, the City's alternative argument fails.

## V. Conclusion

We conclude the superior court correctly applied the proper standards of review in reversing the Board's denial of Petitioner's variance application. In addition, the superior court did not commit prejudicial error by making additional findings of fact in the Order. Accordingly, we affirm the Order reversing the Decision and remanding to the Board with instructions to grant the variance.

AFFIRMED.

Judges GORE and FLOOD concur.

Report per Rule 30(e).